UNITED STATES of America,
Appellant,

v.

Robert David VILLARD.

No. 88–5982.

United States Court of Appeals,
Third Circuit.

Argued June 15, 1989.

Decided Sept. 19, 1989.

Samuel A. Alito, Jr., U.S. Atty., Richard J. Schechter (argued); Asst. U.S. Atty., Newark, N.J., for appellant.

Roger Jon Diamond (argued), Santa Monica, Cal., for appellee.

Before SLOVITER and COWEN, Circuit Judges, and ROTH, District Judge *.

## OPINION OF THE COURT

COWEN, Circuit Judge.

In this unusual case, we are called upon to decide whether the district court, following the jury's conviction of the defendant on charges of transporting child pornography across state lines, properly granted the defendant's motion for judgment of acquittal. The specific issue is whether sufficient evidence was presented to allow the jury to determine that what the defendant transported was actually child pornography, given that the photographs at issue were unavailable and the only evidence as to their contents consisted of the testimony of a witness who had seen the photographs. We hold that the description in this case did not constitute sufficient evidence to support a conviction for the crimes charged. Therefore, we will affirm the order of the district court.

## I.

The opinion of the district court presents an extensive discussion of the facts and procedural history of this case. *See United States v. Villard,* 700 F.Supp. 803 (D.N.J.1988). We will, however, provide a somewhat briefer version as background for this appeal. On September 3, 1987, a federal grand jury indicted Robert David Villard on three counts. Count One alleges that on July 23, 1984, Villard transported from New Jersey to California a videotape depicting "a minor male engaging in the lascivious exhibition of his genitals and pubic area" in violation of 18 U.S.C. § 2252(a)(1). At the close of the government's case, Villard's motion for judgment of acquittal was granted as to Count One. Count One is not at issue on this appeal.

Count Two charges that on November 14, 1986, Villard transported from California to New Jersey three magazines and the front and back cover of a fourth magazine, depicting "minor males engaged in lascivious exhibition of their genitals and pubic areas" also in violation of 18 U.S.C. § 2252(a)(1). Count Three alleges that on November 16, 1986 Villard returned to California with the same materials designated in Count Two.

On December 1, 1987, the district court denied Villard's motion to dismiss the indictment. A jury trial commenced on March 15, 1988. At the close of the government's case, Villard moved for a judgment of acquittal on all counts. The court granted Villard's motion to enter judgment of acquittal on Count One, and reserved judgment on Villard's motion for a judgment of acquittal on Counts Two and Three. The government's allegations in Counts Two and Three are based on four items. With regard to three of the items, the jury indicated in answers to special interrogatories that it did not find the materials to have depicted a "minor engaged in sexually explicit conduct." 700 F.Supp. at 805–06.

The fourth item, for which Villard was convicted, consists of four photographs contained in a magazine entitled *Beach Boys No. 2. Beach Boys No. 2* was not

* The Honorable Jane Roth of the United States District Court for the District of Delaware, sitting by designation.

admitted into evidence, apparently because Villard's copy was destroyed and the government was unable to procure another copy. However, the jury viewed surveillance videotapes showing Villard and a government informant, Henry Feltman, perusing and commenting upon the magazine. It was impossible to discern any details of the magazine from the video images, but the pictures in question apparently were contained on two pages which were across from one another in the magazine. The jury heard and read the following transcribed portion of the conversation which occurred while Villard and Feltman were viewing the two pages:

> Feltman: Excellent. Oh, even better. This is what, Beach Boy Number 2. In Paris, huh?
>
> Villard: Yeah, I went to the address, they were closed up and they didn't open until Tuesday and I left Sunday ... or something like that.
>
> Feltman: Uh huh.
>
> Villard: So there was no way I could rearrange my trip even though I ...
>
> Feltman: Now what kind of store would you find these in?
>
> Villard: Uhh, I bought these in a gay bookstore.
>
> Feltman: O.K. Certainly un ... got nothing on there.
>
> Villard: It's done with mirrors.
>
> Feltman: Huh?
>
> Villard: They have mirrors.
>
> Feltman: I wonder if he's asleep. He's three quarters hard. Maybe he sleeps in the buff like that. He's pretty hairy, though, God but not just much under the arm.

700 F.Supp. at 806.

After the jury was shown a portion of the surveillance videotape containing the above conversation, Feltman testified as follows:

> Q. Now which magazine are you looking at that [sic] that point?
>
> A. I'm looking at Beach Boys Number two.
>
> Q. Now you've just talked about some photos and Mr. Villard talked about mir-

rors. You're looking at the magazine, correct?

> A. Correct.
>
> Q. In front of you. Please explain to the jury as accurately as you can the description of the, of the depictions on those pages.
>
> A. Okay. I was looking at Beach Boys number two. The magazine was opened like this. You could see there was two photographs on each page. Like a left page and a right page. Now these pictures were all of the same boy. This boy was approximately 14, 15 years old. He was fully nude. He was lying on what appeared to be a bed or a mattress. And his eyes were closed as though he was sleeping. However, looking at the two pictures on the left page, versus the two pictures on the right page, they were very, very similar. They pretty near looked the same. This is where Bob said it looks like it was done with mirrors. This was, page was a reflection of the left page. The right page, vice versa. It could work either way. However, I don't believe he was asleep because there were slightly variations between each photograph. The way the boy was lying there had been a little bit of movement each time. His knees were bent slightly upwards during this.
>
> Q. Now when you said—
>
> A. And he had three quarters, you know, like a three quarters erection, semi erect.
>
> Q. Once again, how much of the, each photograph did this child take up?
>
> A. Okay, these were close, closein [sic] type photographs showing him from his head down to approximately knee level. That they filled the photographs on each page. They filled the entire page.

700 F.Supp. at 807.

As the district court noted, it could be inferred that the following conversation, which occurred on the next portion of the surveillance tape which was played for the jury, referred to the same set of photographs:

Feltman: Would you keep them books at home, or do you consider them too risque?

Villard: No. I don't keep them out where you can see them at home. But I keep them on a ... (unintelligible)

Feltman: I mean they have hard ones and I'm surprised that ...

Villard: Just that one. That one, I don't keep them around the house with a hard on.

Feltman: What the Wonderboy one.

Villard: Yeah.

Feltman: Yeah. I mean some of the other pictures in there were ...

Villard: No hard he's laying in the bed, just flopped up. I mean, it's you know, it's really not hard, there's no sexual activity going on.

Feltman: Yeah. Still, it's, huh, I think in some places just an erection will qualify as ...

Villard: Yeah, I'm saying it's not erect really.

Feltman: Huh.

Villard: If he's standing up to make sure it's an erection wouldn't you.

Feltman: Uh huh.

Villard: And everything else is obviously, you know, innocent.

700 F.Supp. at 807.

The jury responded in the affirmative to the following special interrogatory: "Do you find unanimously and beyond a reasonable doubt that a magazine referred to as 'Beach Boys number two' contained a visual depiction of a minor engaged in sexually explicit conduct?" *Id.* The jury also

found that Villard had transported this visual depiction from California to New Jersey and back again. Therefore, the jury found Villard guilty on Counts Two and Three as to the photographs contained in *Beach Boys No. Id.* at 807–08. Following the verdict, Villard renewed his motion for a judgment of acquittal and also moved, in the alternative, for a new trial. The district court granted both motions,[1] and the government appeals.

## II.

Under the Federal Rules of Criminal Procedure, the district court "shall order the entry of judgment of acquittal ... if the evidence is insufficient to sustain a conviction of such offense or offenses." Fed.R. Crim.P. 29(a). The issue before this Court is the same as that before the district court: whether sufficient evidence existed to support the convictions as a matter of law. *See United States v. Miah,* 433 F.Supp. 259, 264 (E.D.Pa.1977), *aff'd,* 571 F.2d 573 (3d Cir.1978). We must examine the evidence as a whole, *see United States v. Beck,* 615 F.2d 441, 448 (7th Cir.1980), and in the light most favorable to the government. *See United States v. Lowell,* 649 F.2d 950, 958 (3d Cir.1981).

The Supreme Court has recognized "child pornography as a category of material outside the protection of the First Amendment" *New York v. Ferber,* 458 U.S. 747, 763, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982). Moreover, "[t]he test for child pornography is separate from the obscenity

---

1. Although the district court granted the motion for judgment of acquittal, the court also granted the motion for a new trial in case the judgment of acquittal was reversed on appeal. This was done pursuant to Fed.R.Crim.P. 29(d), which provides in part:

   If a motion for judgment of acquittal after verdict of guilty under this Rule is granted, the court shall also determine whether any motion for a new trial should be granted if the judgment of acquittal is thereafter vacated or reversed, specifying the grounds for such determination. If the motion for a new trial is granted conditionally, the order thereon does not affect the finality of the judgment. Fed.R.Crim.P. 33 authorizes the court to order a new trial "if required in the interest of justice."

   The district court granted the motion for new trial because it determined that the evidence of the videotape presented in connection with Count One, which the court dismissed at the close of the government's case, prejudiced the jurors against Villard when they considered the charges in Counts Two and Three. The dismissal of Count One is not an issue raised in this appeal. Moreover, the order of a new trial is moot, given our holding affirming the district court's acquittal on Counts Two and Three. For the same reason, Villard's contention that reversal and a new trial would violate the Double Jeopardy Clause of the United States Constitution is also moot.

standard enunciated in *Miller* [*v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) ]" *Id.* 458 U.S. at 764, 102 S.Ct. at 3358. The statute under which Villard was indicted stated, in relevant part:

(a) Any person who—

(1) knowingly transports or ships in interstate or foreign commerce or mails any visual depiction, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct ... shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a).[2] The statute defines "minor" as "any person under the age of eighteen years." 18 U.S.C. § 2256(1). The statute defines "sexually explicit conduct" as including any of the following:

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(B) bestiality;

(C) masturbation;

(D) sadistic or masochistic; abuse; or

(E) *lascivious exhibition of the genitals or pubic area of any person* ....

18 U.S.C. § 2256(2) (emphasis added).[3]

The question of whether the photographs allegedly constituting child pornography must be in evidence in order to support a conviction under this statute appears to be an issue of first impression. The district court determined that, absent the pictures themselves, the evidence presented in this case provided an insufficient basis for the jury to conclude beyond a reasonable doubt, first, that the individual depicted was engaged in sexually explicit conduct—specifically, "lascivious exhibition of the genitals," and, second, that Villard transported depictions of a "minor." *See* 700 F.Supp. at 813, 815.[4] The government on appeal contends that, regardless of what a reviewing court might conclude, Feltman's testimony constituted sufficient evidence from which a *jury* could find that the person depicted was a minor engaged in "lascivious exhibition of the genitals." We examine this issue below.[5]

*Lascivious Exhibition of the Genitals*

We must decide whether the evidence in this case—consisting of Feltman's testimony, and the surveillance videotape of Feltman and Villard—is sufficient to establish beyond a reasonable doubt that the person depicted in the photographs was engaged in "lascivious exhibition of the genitals or pubic area."

Congress did not expressly define "lascivious exhibition of the genitals or pubic area," one of the five types of prohibited "sexually explicit conduct" listed in 18 U.S.C. § 2256(2). Whatever the exact parameters of "lascivious exhibition," we find it less readily discernable than the other, more concrete types of sexually explicit conduct listed in section 2256(2). The language of the statute makes clear that the depictions must consist of more than merely nudity; otherwise, inclusion of the term "lascivious" would be meaningless. The

**2.** Section 2252(a) has since been amended by the Child Protection and Obscenity Enforcement Act of 1988 to add the phrase "by any means including by computer" after the words "interstate or foreign commerce." *See* Pub.L. 100–690, Title VII, § 7511(b), Nov. 18, 1988, 102 Stat. 4485.

**3.** Section 2256, the definitional section of the statute, was previously numbered 2255. This renumbering resulted from the fact that the Child Protection Act of 1984, 18 U.S.C. §§ 2251–2257, was amended in 1986.

**4.** Villard has not argued, below or on appeal, that the government failed to introduce sufficient evidence to demonstrate that he transported visual depictions across state lines on two occasions in 1986. The issues on appeal therefore focus on the *contents* of the depictions.

**5.** Villard also argues in his brief that Counts Two and Three duplicate one another because he is charged in Count Three with transporting on November 16, 1986 from New Jersey to California the same materials which Count Two charges were transported on November 14, 1986 from California to New Jersey. We disagree. Counts Two and Three do not represent a single continuous transaction, because the government must prove different facts in order to achieve convictions in each of Counts Two and Three. *See United States v. Stanfa*, 685 F.2d 85, 87 (3d Cir.1982); *see also United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir.1978).

legislative history of the statute indicates, however, that an exhibition of the genitals need not meet the standard for obscenity in order to be considered lascivious. *See United States v. Dost*, 636 F.Supp. 828, 831 (S.D.Cal.1986), *aff'd sub nom, United States v. Weigand*, 812 F.2d 1239 (9th Cir.), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987); *see also United States v. Rubio*, 834 F.2d 442, 447–48 (5th Cir.1987).[6]

▪ In determining the meaning of "lascivious exhibition of the genitals or pubic area" under 18 U.S.C. § 2256(2)(E), we are aided in particular by one court's development of six factors for the trier of fact to consider. In *United States v. Dost, supra,* 636 F.Supp. at 832, the court analyzed the following factors:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

The *Dost* court also noted: "[A] visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.' The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor." 636 F.Supp. at 832.

**6.** Although the issue is not raised in this case, we note that other courts have found that the term "lascivious" does not render the statute unconstitutionally vague. *See United States v. O'Malley*, 854 F.2d 1085, 1086–87 (8th Cir.1988); *Weigand*, 812 F.2d at 1243 (" 'Lascivious' is no

On appeal, the Court of Appeals for the Ninth Circuit determined that the "standard employed by the district court was over-generous to the defendant." *United States v. Weigand*, 812 F.2d 1239, 1244 (9th Cir.), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987). The court explained that "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like minded pedophiles." *Id.* The court did not, however, clarify the factors to be applied, and proceeded to affirm the district court. The only other circuit court which appears to have considered the issue recognized the *Dost* factors, but did not apply them as it was unnecessary in that case to decide the "lasciviousness" issue. *See United States v. Nolan*, 818 F.2d 1015, 1019 n. 5 (1st Cir.1987) (listing the six *Dost* factors).

We adopt the *Dost* factors as a means of determining whether a genital exhibition is "lascivious." We do so, of course, not out of any precedential obligation, but instead because the *Dost* factors provide specific, sensible meaning to the term "lascivious," a term which is less than crystal clear. The district court in the instant case instructed the jury to consider each of the *Dost* factors, and cautioned the jury that no single factor should be given undue weight and that a depiction need not involve all the factors in order to be "lascivious." App. at 703–04. We agree with the district court's basic application of the *Dost* factors. All six factors should be presented to the jury for consideration. Although more than one factor must be present in order to establish "lasciviousness," all six factors need not be present.

The salient portions of Feltman's testimony regarding the contents of the picture at issue are as follows:

different in its meaning than 'lewd,' a commonsensical term whose constitutionality was specifically upheld in *Miller v. California,* 413 U.S. 15, 25, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973), and in [*New York v.*] *Ferber*[,] 458 U.S. [747,] 765, 102 S.Ct. [3348,] 3359.").

Q. ... Please explain to the jury as accurately as you can the description of the, of the depictions on those pages.
A. Okay. I was looking at Beach Boys number two. The magazine was opened like this. You could see there was two photographs on each page. Like a left page and a right page. Now these pictures were all of the same boy. This boy was approximately 14, 15 years old. He was fully nude. He was lying on what appeared to be a bed or a mattress. And his eyes were closed as though he was sleeping. However, looking at the two pictures on the left page, versus the two pictures on the right page, they were very, very similar. They pretty near looked the same.... However, I don't believe he was asleep because there were slightly variations between each photograph. The way the boy was lying there had been a little bit of movement each time. His knees were bent slightly upwards during this.

....

A. And he had three quarters, you know, like a three quarters erection, semi erect.
Q. Once again, how much of the, each photograph did this child take up?
A. Okay, these were close, closein [sic] type photographs showing him from his head down to approximately knee level. That they filled the photographs on each page. They filled the entire page.

700 F.Supp. at 807.

In analyzing whether the described photographs depicted a "lascivious exhibition of the genitals or pubic area," we examine Feltman's description in light of each of the *Dost* factors. As stated above, we must examine the evidence in the light most favorable to the government, and thus we will assume that Feltman's testimony is truthful.

■ First, is the focal point of the photographs the child's genitalia or pubic area? Feltman testified that the photographs were "closein" photographs, that they showed a portion of the body from the head down to the knees, and that the boy had a "three quarters erection." If the photographs showed the boy's body from head to knees, they may have constituted closeup photographs of the boy's body, but would seem not to constitute closeup photographs of the boy's genitals. Moreover, simply because the boy had a partial erection does not necessarily mean that the erection was the focus of the photograph.[7] Indeed, the jury acquitted Villard with regard to other photographs depicting subjects with erections.[8] While the depiction of an erection

7. Counsel for the government acknowledged on appeal that if the youth did not have an erection, the photograph would not have been lascivious. We need not decide that issue here. However, the government's emphasis on the subject's partially erect penis does not answer questions about its appearance in the context of the total photograph.

8. One photograph, which the jury also did not view, was contained in the inside front cover of a magazine entitled *Wonderboy No. 70*. The government presented surveillance videotapes showing Feltman and Villard viewing the magazine cover. Feltman testified that the picture depicted a boy who

appeared to be 13, 14 years of age. He was fully nude, he had a full erection. And he was taken in an outdoor setting full-length type of picture. And he was facing like towards his left looking out that way.
....
I would consider [the photograph] to have been a far away shot.
....

Far away meaning you could see the surrounding area that he was in. Clearly tell that it was an outdoor setting. And clearly identified him from head to toe.
....
It was a full page photograph.
700 F.Supp. at 805–06. The jury responded in the negative to a special interrogatory asking whether it found the inside front cover of *Wonderboy No. 70* to have depicted a minor engaged in sexually explicit conduct. *Id.*
Another photograph, a copy of which the jury viewed, was taken from the front cover of *Wonderboy No. 70*. The photograph depicted a male, clad only in a pair of brief shorts, with his legs open towards the viewer. He had a smile on his face, and protruding clearly from one leg of the shorts was an erection. While there was no expert testimony as to the male's age, surveillance tapes recorded Villard speculating that the male might be fifteen, sixteen, or seventeen years of age. When asked the same special interrogatory asked as to the photographs at issue on the instant appeal—"Do you find unanimously and beyond a reasonable doubt that

would in many cases constitute a "lascivious exhibition of the genitals," this may not be true in all cases. Thus, absent more detailed testimony or the photographs themselves, we are not satisfied that a jury could reasonably conclude that the "focal point" of the depictions in *Beach Boys No. 2* is the child's genitalia or pubic area.

■ Second, is the setting of the visual depiction sexually suggestive, that is, in a place or pose generally associated with sexual activity? We will consider the pose in our discussion of the third *Dost* factor below. The subject of the photographs was lying on a bed or a mattress, according to Feltman. Beds and mattresses are often associated with sexual activity. They are also commonly associated with sleeping, however, and Feltman testified that the subject had his eyes closed and looked as though he were asleep. To absolutely equate the presence of a bed or mattress with sexual activity may seem like a logical inference, but we think that this linkage, in the abstract, overstates and distorts the significance of the bed or mattress. Thus, while the setting of a bed, by itself, is some evidence of lasciviousness, it alone is not enough to support a finding of lasciviousness.

■ Third, is the child depicted in an unnatural pose, or in inappropriate attire, considering the age of the child? In this instance, the boy was naked, and thus the issue of appropriateness of the attire does not arise. Whether nakedness itself is "inappropriate" is probably best answered not in the abstract, but with reference to the other factors present in a specific case. For example, a photograph of a naked girl might not be lascivious (depending on the balance of the remaining *Dost* factors), but a photograph of a girl in a highly sexual pose dressed in hose, garters, and a bra could certainly be found to be lascivious.

As for whether the boy in this case was depicted in an unnatural pose, Feltman's brief description on this point is an insufficient basis from which to conclude that the male's pose was unnatural. A naked boy lying in bed with a partial erection, appearing to be asleep, with his knees "bent slightly upwards," might strike some minds as being a "natural" pose as much as an "unnatural" one. The government's assertion at oral argument that photographing a naked boy with a partial erection is unnatural is irrelevant, of course, because our focus must be on the contents of the picture itself rather than on the producer of the picture.

■ Fourth, is the child fully or partially clothed, or nude? The photographs depicted a completely nude subject, and this is certainly a factor which, in combination with other factors, could support a finding of lasciviousness. As mentioned above, however, the statute requires more than mere nudity, because the phrase "exhibition of the genitals or pubic area" in § 2256(2)(E) is qualified by the word "lascivious."

Fifth, does the visual depiction suggest sexual coyness or a willingness to engage in sexual activity? From Feltman's description, there is no evidence, either by gesture, facial expression, or pose, that the subject of the photograph displayed a willingness to engage in sexual activity. The testimony contained little detail about the body position, except that the subject was lying down with his knees "bent slightly upwards." With regard to facial expression, the only testimony was that the subject's eyes were closed. Finally, the pose and setting of the photograph appears to be as indicative of repose or sleep as of sexual readiness.

■ Sixth, and finally, is the visual depiction intended or designed to elicit a sexual response in the viewer? In this case the

---

[*Wonderboy No. 70*] contained a visual depiction of a minor engaged in sexually explicit conduct?"—the jury responded in the negative. 700 F.Supp. at 805.

Despite the presence of erections in these photographs, the jury did not convict Villard as to them. We recognize that the jury may have

found the photographs lascivious, but that they did not depict minors. We refer to these photographs merely to underscore the point that an erection, partial or full, does not by itself necessarily establish that a depiction is "lascivious," or that the genitals were the focal point of the depiction.

surveillance tape of Villard and Feltman discussing the photograph while viewing it certainly could indicate to a reasonable fact-finder that the picture in fact elicited a sexual response in the viewers. Although it is tempting to judge the *actual* effect of the photographs on the viewer, we must focus instead on the *intended* effect on the viewer. We agree with the view expressed by the district court in this case:

> Child pornography is not created when the pedophile derives sexual enjoyment from an otherwise innocent photo. As the Ninth Circuit stated, "Private fantasies are not within the statute's ambit." [*United States v. Wiegand,*] 812 F.2d at 1245. When a picture does not constitute child pornography, even though it portrays nudity, it does not become child pornography because it is placed in the hands of a pedophile, or in a forum where pedophiles might enjoy it. *Faloona v. Hustler Magazine, Inc.*, 607 F.Supp. 1341 (N.D.Tex.1985) (nude pictures of children did not constitute child pornography when published in "legitimate" *Sex Atlas* or in "raunchy" *Hustler* magazine, because they did not depict children engaged in sexual conduct).

700 F.Supp. at 812. We must, therefore, look at the photograph, rather than the viewer. If we were to conclude that the photographs were lascivious merely because Villard found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand—a legal analysis of the sufficiency of the evidence of lasciviousness.

■ We believe that the sixth *Dost* factor, rather than being a separate substantive inquiry about the photographs, is useful as another way of inquiring into whether any of the other five *Dost* factors are met. Out of the five substantive *Dost* factors for determining lasciviousness, we find that only two factors are present with any certainty—the setting of the photographs was a bed or mattress, a place commonly associated with sexual activity (the second factor), and the subject of the photographs was completely nude (the fourth factor). In addition, the subject's genitals were visible and he displayed a partial erection. Without more detail and without evidence regarding the other *Dost* factors, however, this information about the photographs is simply not enough. We find the district court's analysis quite incisive on the issue of the sufficiency of the evidence:

> The court's concern is with the details which Mr. Feltman did *not* convey. For example, from what perspective was the individual photographed? Was it from above, or level with the camera? Was the subject lying on his side, back, or stomach? Was the camera positioned over his shoulder, behind his head, or squarely between his legs? Were the genitals in the foreground, or the background of the picture? Were they in strong light, subdued light, or shadow? The knees were described as "bent slightly upwards." Were they apart or together? Did they partially obscure the genitals, or accentuate them? Where were his arms and hands? Was the photo taken in natural light? Was it taken during the day or at night? Had the subject been posed or did it appear to be a candid shot? The evidence does not answer any of these questions.... The unanswered questions about the photographs in *Beach Boys No. 2* are probably as boundless as the imagination of the individual who examines the trial record.... The jurors may have been forced to make a determination that was based more on their own imaginations than on the evidence presented.

700 F.Supp. at 813 (emphasis in original).

Obviously, if the jury had been able to see the photographs, many of the questions raised above would have been answered and a sufficient basis perhaps could have been established for a finding of lasciviousness. This was not the case, however, and Feltman's brief, sparse description and the only marginally helpful surveillance tape transcripts do not provide evidence sufficient to support a finding that the photographs constituted a "lascivious exhibition of the genitals or pubic area."

Our holding does not necessarily preclude the government from ever supporting

a finding of lasciviousness solely by introducing testimony describing photographs, without the actual photographs in evidence (although our view of such cases is circumspect). The testimony in this case, however, lacked sufficient detail in many important respects, and raised the distinct possibility that the jury may have made a finding of lasciviousness based on conjecture or imagination rather than fact.

In light of our disposition on this ground, we need not consider the district court's conclusion that there was insufficient evidence that the person depicted was a minor, although we believe that there is considerable question whether the district court's ruling was correct.

### III.

For the reasons discussed above, we will affirm the district court's judgment of acquittal.

ROTH, District Judge, dissenting.

I respectfully dissent from the majority's opinion. I agree that the six-factor test enumerated in *Dost* provides a clear, workable definition of "lascivious display of the genitals or pubic area," and I too would adopt that test as a means of determining lasciviousness in cases brought pursuant to 18 USC section 2256(2)(E). I share the majority's circumspect view of cases where the government produces only testimony describing a photograph, without the photograph itself, alone in support of its argument that the photograph depicts a "lascivious exhibition of the genitals or pubic area." I recognize that in such cases the jury is faced with the difficult task of distinguishing between a lascivious genital exhibition and plain nudity, which is not prohibited by section 2256(2)(E).[1] Moreover, I do not dispute the majority's assertion that

Mr. Feltman's testimony comprises virtually all of the evidence offered in this case relevant to a determination of whether defendant violated the Statute.

I am of the opinion, however, that Feltman's testimony, when viewed in the light most favorable to the government, is sufficient to support a determination of lasciviousness in this case. Similarly, I am convinced that his testimony supports a determination that the boy depicted in "Beach Boys Number 2" was under the age of eighteen at the time the photograph was taken. I would, therefore, reverse the district court's judgment of acquittal and remand the case for a new trial.

### I.

As the majority states in Part II of its opinion, in deciding whether sufficient evidence existed to support defendant's convictions, this Court must examine the evidence in the light most favorable to the jury. *See United States v. Lowell,* 649 F.2d at 958. The Court must not substitute its own interpretation of the evidence for that of the jury. *United States v. Varkonyi,* 611 F.2d 84, 85 (5th Cir.), *cert. denied,* 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980). Accordingly, I will assume that Mr. Feltman's testimony contains a truthful and substantially complete description of the relevant photographs and, where his testimony is capable of more than one interpretation, I will defer to that of the jury.[2]

Construing Feltman's testimony in this manner, I am led inescapably to the conclusion that the government provided a sufficient basis for the jury to find that the photographs contained in "Beach Boys No. 2" depict a lascivious exhibition of the subject's genitals. I have weighed the six

---

**1.** *See also* the district court's opinion, 700 F.Supp. at 811:

"However, the court acknowledges that in determining the depiction of a 'lascivious exhibition of the genitals,' a jury is called upon often to make a more careful evaluation based on subtle visible nuances. This is because the law does not prohibit the transportation of visual depictions of mere nudity."

**2.** I read the language of *Lowell* and *Varkonyi* to require no less. Accordingly, I differ with the majority, which states that it simply assumes that Feltman's testimony is truthful. Majority opinion at 123. I do not believe, however, that this is the reason that the majority and I reach different outcomes. Were I merely assuming Feltman's testimony were true, I would reach the same conclusion.

factors which the *Dost* court found to be relevant to a determination of lasciviousness and I find that each of these factors supports the jury's finding.

First, the focal point of these four photographs surely is the subject's genitalia. The "closein" nature of the photographs ensures that the only possible focal points are the subject's head, torso, or genitalia. Of those three areas, the genitalia is the most conspicuous by far. Furthermore, only the genitalia is presented in something other than a relaxed, normal manner; as a result, only that area attracts the viewer's attention.[3] Moreover, by cutting the image of the boy off at the knees, the photographer is using the long recognized visual device of a diagonal line, here the thighs, to lead the viewer's eyes into the point of emphasis of the picture, here the genitalia. The pattern created by the four, almost mirror images of the boy, two filling each of the opposing pages, further accentuates such a visual device.

Second, the setting of the photographs is sexually suggestive. At the risk of sounding conventional, it is difficult to imagine a setting more universally associated with sex than a bed.

Third, the subject is depicted in an unnatural pose. A naked boy lying on a bed with a partial erection and his knees slightly bent would appear to be posed for the purpose of displaying his genitalia, not for comfort. In the words of the *Dost* court, this position "would have to be characterized" as a sexual one, "not the way a child or adult ordinarily sits or reclines.... This unusual pose is one that an ordinary child would not normally assume but for adult coaching...." 636 F.Supp. at 833.

Fourth, the subject is completely naked.

Fifth, the photographs suggest a willingness on the part of the subject to engage in sexual activity. It is almost too obvious to bear mentioning that a naked boy with a partial erection is exhibiting his willingness to have sex.[4]

Sixth, the photographs are designed to elicit a sexual response in the viewer. The limited contents of the photographs make the photographer's aim obvious.[5] To argue that these photographs could have been taken for artistic, anatomical, or other nonsexual purposes strikes me as naive in the extreme.[6]

Both the majority and the *Dost* court have made it clear that the government need not show that all six of the above factors supports a determination that a photograph depicts a lascivious exhibition of the subject's genitals. 636 F.Supp. at 832. Each photograph should be judged on

3. The majority suggests that the jury's refusal to convict defendant in connection with other photographs depicting subjects with erections indicates that a jury can reasonably conclude that the focal point of such a photograph is something other than the erection itself. However, the basis for the jury's failure to convict in connection with those other photographs is unknown, so this suggestion is not necessarily justified. In any event, the government does not have the burden of proving that the evidence is capable of a single interpretation which would lead to a determination of guilt; it only need show that the evidence, when construed in the light most favorable to it, reasonably supports a determination of guilt.

4. Although the Feltman stated that the subject's eyes are closed in the photographs, he also stated that the subject did not appear to him to be asleep because of the slight variations between each of the four photographs. Accordingly, while the subject's facial expression may not suggest desire, I will not assume, as the majority does, that his expression suggests sleep, since that assumption can only be reached by viewing Feltman's testimony in the light least favorable to the government.

5. I do not share the concern of the district court and the majority over "what Mr. Feltman did *not* convey" about the photographs. 700 F.Supp. at 813. Feltman testified that the photographs were taken "closein" and "filled the entire page." As a result, construing that testimony as truthful and complete, few, if any, relevant details could have been omitted. To speculate otherwise deprives the government of the deference to which it is entitled. The jurors were given enough information about the photographs to reach a conclusion that they depict a lascivious exhibition of the subject's genitals. Accordingly, it was not necessary for them rely on their imaginations to reach that determination. Whether they actually did so is irrelevant.

6. I agree with the majority that the photographs' effect on defendant is irrelevant in connection with the issue of whether the photographs were intended to elicit a sexual response.

the basis of its overall content, taking into account the subject's age. *Id.* Nevertheless, in the present case, viewing the evidence in the light most favorable to the government, I find that all six factors indicate that the photographs in "Beach Boys No. 2" depicted a lascivious genital exhibition.

## II.

Viewing the evidence in the light most favorable to the government also leads me to conclude that Feltman's testimony was sufficient to support the jury's conclusion that the subject depicted in the photographs was a minor when the pictures were taken.[7] Here again, Feltman's testimony constituted the only relevant evidence on this point.[8] In describing the photographs, Feltman observed that the subject "was approximately 14, 15 years old."

Defendant contends that Feltman's testimony is not sufficient evidence to support the jury's conclusion that the subject of the photographs was a minor. According to defendant, Feltman was an improper lay witness because he lacked independent knowledge of the subject's age. Furthermore, defendant argues, even if Feltman were a proper witness, his testimony was insufficient to support a conclusion that the subject of the photographs was a minor, due to Feltman's failure to state the basis for his opinion, and his failure to specify an exact age, especially where the subject appeared to be close to eighteen.

The government maintains that by viewing the photographs in "Beach Boys No. 2," Feltman gained the personal knowledge necessary to enable him to testify as a lay witness regarding the subject's age. Since Feltman's testimony was based on his perception of the subject's age and since it helped the jury to resolve that issue, the government argues, the testimony was properly admissible and, when viewed in a favorable light, was sufficient to support the jury's determination that the subject was a minor.

The Federal Rules of Evidence forbid a witness from testifying as to a matter "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Fed.R.Evid. 602. Feltman's statement that he had seen "Beach Boys No. 2" and the videotape recording of him looking at it were more than adequate to support a finding that he had personal knowledge of the magazine's contents.[9] App. at 436, 759–60. Accordingly, because Feltman had a proper basis for testifying and the defense made the jury aware of that basis, Feltman was qualified to testify as a lay witness regarding his perception of the photographs contained in "Beach Boys No. 2." With respect to the content of Feltman's testimony, the Federal Rules of Evidence provide that a lay witness' opinion testimony "is limited to those opinions ... which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed.R. Evid. 701. Part (a) of Rule 701 reiterates the first-hand knowledge requirement found in Rule 602 and requires that any opinions that the witness expresses be rationally based on that knowledge. 3 J.

---

7. A minor is defined as "any person under the age of eighteen years." 18 USC §§ 2252(a)(1)(A), 2256(1).

8. The only other evidence relating to the age of the subject depicted in the photographs in "Beach Boys No. 2" comes from the FBI surveillance tape which recorded Feltman and defendant looking at the magazine. On the tape, Feltman stated that the subject "was pretty hairy, though, God, but not just much under the arm." 700 F.Supp. at 806. The district court held that this observation was too ambiguous and inconclusive to support a finding that the

subject was a minor at the time the photos were taken. *Id.* I agree. As a result, Feltman's observation on the surveillance tape will not be considered as evidence which could support a determination of the subject's age.

9. *See* Original Advisory Committee's Note, *reprinted at* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* at 602–2 (1988): "personal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception."

Weinstein & M. Berger, *Weinstein's Evidence* ¶ 701[02] at 701–14–17 (1988). The rational connection requirement means only that the witness's opinion must be one that a normal person would form on the basis of the observed facts. *Id.* at 701–18. Whether they articulate it or not, most people form an opinion of a person's age when viewing a photograph of that person. Feltman's testimony therefore satisfies the rational connection requirement of section (a) of Rule 701.

Part (b) of Rule 701 is satisfied when the witness's opinion helps the jury determine a disputed fact. Because it was the only proof submitted on the issue, Feltman's testimony was necessarily helpful to the jury in determining the age of the subject of the photographs contained in "Beach Boys No. 2." As a result, Feltman's testimony satisfies the helpfulness requirement of section (b) of Rule 701. Because Feltman was qualified to testify as a lay witness, as required by Rule 602, and his testimony was within the limits enunciated in Rule 701, his testimony was properly before the jury.

The fact that Feltman estimated the age of the subject to be fourteen *or* fifteen years old does not mean that his testimony was too imprecise to support a finding that the subject was under eighteen. The district court found Feltman's observations on the subject's age too "scant and speculative" to support a finding of minority, especially in light of the fact that "the individual depicted may well be in his late teens." 700 F.Supp. at 815. I would prefer to take the approach toward such testimony advocated by Judge Weinstein: "So long as the witness' statement is based on personal knowledge and might aid the trier of fact, the fact that the witness expresses qualifications about its accuracy does not convert the testimony into a matter of opinion barred by Rule 701." 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 701[02] at 701–29 (1988).

Feltman's testimony was not only properly admitted; it was also sufficient, when viewed in the light most favorable to the government, to support the jury's determination that the subject of the photographs was a minor. The defense offered no evidence to contradict Feltman's testimony on this point but did remind the jury, through a witness's testimony and in its summation, that it is often difficult to discern teenagers' ages based on their appearances. App. at 554, 635. The jury chose to believe Feltman. In light of my determination that they had enough evidence to do so, I would not substitute their interpretation of the evidence for my own.

### III.

For the reasons stated above, I would reverse the decision of the district court and remand for a new trial.