IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2011 Session

**STATE OF TENNESSEE v. JOHN MICHAEL WHITLOCK**

**Appeal from the Criminal Court for Knox County**
**No. 88103      Richard Baumgartner, Judge**

---

**No. E2010-00602-CCA-R3-CD - Filed June 6, 2011**

---

Following a jury trial, the Defendant, John Michael Whitlock, was convicted of two counts of sexual exploitation of a minor, a Class D felony. See Tenn. Code Ann. § 39-17-1003(d). In this direct appeal, the Defendant raises the following issues for our review: (1) The State presented insufficient evidence to sustain his convictions for sexual exploitation of a minor; (2) The trial court erred when it allowed the State to give a rebuttal closing argument when the Defendant waived opening statements and offered no proof; and (3) The trial court erred when it instructed the jury regarding the factors contained in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986). Following our review, we conclude that the State did not present sufficient evidence to support the Defendant's convictions for sexual exploitation of a minor and, therefore, we reverse the judgments of the trial court and dismiss the charges against the Defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed;**
**Case Dismissed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

John M. Boucher, Jr., Knoxville, Tennessee, for the appellant, John Michael Whitlock.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Randall E. Nichols, District Attorney General; and Kevin J. Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

In November 2007, a Knox County grand jury issued an indictment charging the Defendant with one count of especially aggravated sexual exploitation of a minor and one count of sexual exploitation of a minor. The Defendant's trial was conducted on February 2, 2009.

The only witness presented by the State at trial was Chad Coleman, a deputy with the Knox County Sheriff's Office, who also served as the "courtesy officer" for the Woodlands West apartment complex in Knoxville. Deputy Coleman recalled that, at approximately 5:00 p.m. on August 4, 2007, he was relaxing at the apartment complex's swimming pool when he saw the Defendant, who he later found out was also a resident at Woodlands West, arrive at the pool and sit on a lounge chair. He observed that the Defendant brought a portable DVD player, a mini camcorder, and a cell phone to the pool. Deputy Coleman testified, "I noticed that he got his video camera up, and he was—started filming some of the smaller female children that came in." Deputy Coleman said that he became alarmed when he heard the Defendant make "moaning and groaning noises as he was filming" and when he noticed that the Defendant was focusing most of his camera's attention on a seven-year-old girl. He estimated that he observed the Defendant for approximately one hour, but noted that the Defendant's videotaping was periodic, rather than continuous, during that time.

Deputy Coleman stated that he approached the Defendant and identified himself as a police officer and the courtesy officer for the apartment complex. He recalled that the Defendant denied filming the little girl at the pool and let Deputy Coleman watch the video. Deputy Coleman then told the Defendant that he wanted to take the video as evidence and asked him to leave the pool area, at which time the Defendant threw the DVD on the ground and left.

On cross-examination, defense counsel attempted to get Deputy Coleman to agree that the sounds heard on the videotape reflected the Defendant's attempts to sing with music playing at the pool, rather than moaning and groaning noises. However, the deputy clarified that he "never said the only thing he was doing was moaning and groaning" and stated that he could not understand what the Defendant was saying on the video.

Because the offense for which the Defendant was convicted was based on his possession of this DVD, a description of the contents of the six-minute and five-second video is warranted. The video shows a swimming pool, as well as the men, women, and children who were in and around the pool that day. Much, if not most, of the video is filmed with an unsteady hand and there are multiple points when the camera points up to the sky and down

-2-

to the patio floor, as well as many times when the camera moves from side to side without focusing on any person or object at all. However, there is a young blonde female child wearing a blue and green bikini top and matching shorts,[1] whom Deputy Coleman testified was seven-years-old, who is most often the apparent subject of the video. She is filmed sitting on a lounge chair, sitting on the edge of the pool, standing on the pool stairs, getting out of the pool, walking around the pool, and playing in the pool. The video shows the girl both in wide shots and close-up shots. There are two times in which it appears the video is focused on the blonde girl's shorts or pubic area. In one instance, the girl is sitting on the edge of the pool and is the focus of the camera for approximately three seconds, during which time the camera is zoomed-in and focused on her front mid-section, from her naval to just above her knees. The second time, the girl is standing on the pool steps and the camera, already zoomed-in when it focused on her, shows from the top of her shorts to her thighs for about ten seconds.

The Defendant presented no proof. On the first count of the indictment, the jury convicted the Defendant of sexual exploitation of a minor, a lesser-included offense of especially aggravated sexual exploitation of a minor. The jury also convicted the Defendant of sexual exploitation of minor, as indicted on the second count.[2] The trial court sentenced the Defendant as a Range I, standard offender to three years in the Department of Correction. The Defendant now appeals.[3]

---

[1] The State elected that this girl was the subject of both counts of the indictment.

[2] When the jury asked the trial court a question regarding the difference between the lesser-included offense on the first count and the indicted offense on the second count, the trial court informed them that the charges were the same and that it would "merge any offenses that need to be merged." During a conversation with the parties after the verdict was read and the jury was dismissed, the trial court again said that it would merge the two convictions. However, the judgment forms reflect that two convictions were entered with concurrent three-year sentences. If we were not reversing and dismissing the Defendant's convictions, we would remand for the entry of corrected judgment forms indicating that the two convictions for sexual exploitation of a minor merge.

[3] The State argues that the Defendant's appeal should be dismissed because the Defendant did not timely file his motion for new trial. See Tenn. R. App. P. 4(a), (c) (noting that a defendant has thirty days from the entry of the judgment of conviction to file his notice of appeal or a post-judgment motion challenging his conviction). The trial court entered the judgments of conviction on November 19, 2009, but the Defendant's motion for new trial was not filed until February 10, 2010. The trial court denied the Defendant's motion on March 5, 2010, and the Defendant filed his notice of appeal on March 8, 2010. Rule 4(a) of the Tennessee Rules of Appellate Procedure provides that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." After reviewing the record, we conclude that it is in the interest of justice to waive the timely filing of the Defendant's notice of appeal, and we will address the issue of sufficiency of the evidence, which is an issue
(continued...)

**Analysis**

The Defendant presents the following issues for our review: (1) The State presented insufficient evidence to convict him and, therefore, the trial court erred when it denied his motion for judgment of acquittal[4]; (2) The trial court erred when it allowed the State to give a rebuttal closing argument when the Defendant waived opening statements and offered no proof; and (3) The trial court erred when it instructed the jury regarding the factors contained in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986).

**I. Sufficiency of the Evidence**

The Defendant argues that the State presented insufficient evidence to convict him and, therefore, the trial court erred when it denied his motion for judgment of acquittal. On appellate review of a denial of a motion for judgment of acquittal, we apply the same standard as a question of the sufficiency of the convicting evidence. See State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

---

[3](...continued)
that does not need to be presented in a motion for new trial in order to be heard on appeal. See State v. Boxley, 76 S.W.3d 381, 390 (Tenn. Crim. App. 2001) (citation omitted).

[4] In his brief, the Defendant stated his first two issues for review as follows:

A. The trial court incorrectly overruled the defense[']s motion for judgment of acquittal based upon a clear lack of any evidence suggestion that 'sexual activity' took place in any of the purported images presented at trial.
B. The trial court incorrectly overruled the defense's motion for judgment of acquittal based upon the insufficiency of the evidence.

However, because the gravamen of the Defendant's argument in each issue is that the evidence was insufficient to support his convictions, we have combined those issues.

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Tennessee Code Annotated section 39-17-1003(a) provides, "It is unlawful for any person to knowingly possess material that includes a minor engaged in: (1) Sexual activity; or (2) Simulated sexual activity that is patently offensive." The definition of "sexual activity" includes the following:

> (A) Vaginal, anal or oral intercourse, whether done with another person or an animal;
> (B) Masturbation, whether done alone or with another human or an animal;
> (C) Patently offensive, as determined by contemporary community standards, physical contact with or touching of a person's clothed or unclothed genitals, pubic area, buttocks or breasts in an act of apparent sexual stimulation or sexual abuse;
> (D) Sadomasochistic abuse, including flagellation, torture, physical restraint, domination or subordination by or upon a person for the purpose of sexual gratification of any person;
> (E) The insertion of any part of a person's body or of any object into another person's anus or vagina, except when done as part of a recognized medical procedure by a licensed professional;
> (F) Patently offensive, as determined by contemporary community standards, conduct, representations, depictions or descriptions of excretory functions; or
> (G) Lascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person.

Tenn. Code Ann. § 39-17-1002(8).

The Defendant argues that the State presented insufficient evidence to convict him of sexual exploitation of a minor because it failed to show that the seven-year-old blonde girl

was engaged in sexual activity. The State argues that sexual activity was depicted because there was a lascivious exhibition of the girl's pubic area. See Tenn. Code Ann. § 39-17-1002(8)(G). "Lascivious" is not defined in the statute. However, we note that Black's Law Dictionary defines lascivious as "tending to excite lust; lewd; indecent; obscene." Black's Law Dictionary 897 (8th ed. 2004).

The State contends that this Court should look to six factors that were developed by a federal trial court in the Southern District of California to help determine whether a visual depiction of a minor constitutes lascivious exhibition. See United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987), cert. denied, 484 U.S. 856 (1987). The Dost court stated as follows:

> [I]n determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area" under [the federal statute],[5] the trier of fact should look to the following factors, among any others that may be relevant in the particular case:
> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.
>
> Of course, a visual depiction need not involve all of these factors to be a "lascivious exhibition of the genitals or pubic area." The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor.

Id.

---

[5] We note that the federal statute is worded slightly different than our statute. The applicable federal statute provides that "'sexually explicit conduct' means actual or simulated . . . lascivious exhibition of the genitals or pubic area of any person." See 18 U.S.C. § 2256(2)(A)(v).

While acknowledging that the Dost factors should not be applied exclusively, many state and federal courts have found that they can be helpful in the determination of whether a visual depiction is lascivious. See United States v. Overton, 573 F.3d 679, 686 (9th Cir. 2009) (stating that the Dost factors "are neither exclusive nor conclusive, but operate as merely 'a starting point'"); United States v. Chavin, 546 F.3d 245, 250 (2d Cir. 2008) ("Although the Dost factors are not definitional, they are useful for assessing the sufficiency of evidence, and pose questions that are (at least) germane to the issue of lasciviousness."); United States v. Campbell, 81 F. App'x 532, 536 (6th Cir. 2003) (noting that the list of Dost factors are "not exhaustive" but that they "provide a framework for analyzing the image in its entirety"); State v. Roberts, 2001-00154, p. 10 (La. App. 3 Cir. 10/3/01); 796 So. 2d 779, 786-87 ("[W]e find the Dost factors helpful in our analysis herein but do not find them all inclusive or necessarily applicable to every situation."); State v. Dubois, 746 N.W.2d 197, 208-09 (S.D. 2008) ("The Dost factors are neither exhaustive nor mandatory; however, they provide a workable criterion to an otherwise case-specific inquiry."). Additionally, we note that two panels of this Court have cited the Dost factors when analyzing the sufficiency of the evidence for the offense of especially aggravated sexual exploitation of a minor. See State v. Gary Stephen Mayes, No. E2004-02344-CCA-R3-CD, 2005 WL 2416620, at *1 (Tenn. Crim. App., Knoxville, Oct. 3, 2005) (citing Dost and affirming the conviction of especially aggravated sexual exploitation of a minor for a defendant who videotaped three girls, who were clothed, "focusing on their breasts and pubic areas as they posed, at his direction, draped over a metal handrail and alternately squatted, sat, and stood on both a window ledge and a narrower ledge" along the wall); State v. Larry Dixon, No. 01C01-9802-CC-00085, 1998 WL 712344, at *2 (Tenn. Crim. App., Nashville, Oct. 13, 1998) (citing Dost and affirming the conviction of especially aggravated sexual exploitation of a minor for a defendant who secretly filmed two girls in a bathtub through a two-way mirror while his wife instructed the children to pose).

The Dost factors are not without controversy. See United States v. Hill, 322 F. Supp. 2d 1081, 1085-86 (C.D. Cal. 2004) (concluding that the Dost "test is not particularly helpful," after noting that "[w]hile the Dost factors attempt to bring order and predictability to the lasciviousness inquiry, they are highly malleable and subjective in their application"); see also Amy Adler, Inverting the First Amendment, 149 U. Pa. L. Rev. 921, 953 (2001) ("In my judgment, the Dost test has produced a profoundly incoherent body of case law."). It seems that the sixth factor—whether the visual depiction is intended or designed to elicit a sexual response in the viewer—has generated the most discussion. See United States v. Amirault, 173 F.3d 28, 34 (1st Cir. 1999) (calling the sixth factor "the most confusing and contentious of the Dost factors"). Perhaps one of the biggest questions is whether the visual depiction should be classified as lascivious if it is otherwise innocent but elicited a sexual response from the defendant (or a like-minded pedophile viewer), or whether the determination of lasciviousness should be made based on the average viewer's perception

of the visual depiction. The State argues that the sixth factor should be analyzed by looking at the Defendant's subjective intent and notes that the jury could have found that the Defendant was sexually aroused by the video, given that Deputy Coleman testified that he heard the Defendant moaning and groaning while he was filming.[6]

Some courts have declined to consider the defendant's, or a like-minded pedophile's, subjective intent when applying the sixth Dost factor. See United States v. Wallenfang, 568 F.3d 649, 658 (8th Cir. 2009) ("'[T]he relevant factual inquiry . . . is not whether the pictures in issue appealed, or were intended to appeal, to [the defendant's] sexual interests but whether, on their face, they appear to be of a sexual character.' If they are not of a sexual character, then they are not illegal under the statute 'because they are not lascivious.'") (quoting United States v. Kemmerling, 285 F.3d 644, 646 (8th Cir. 2002)); Amirault, 173 F.3d at 34-35 (1st Cir. 1999) ("[I]n determining whether there is an intent to elicit a sexual response, the focus should be on the objective criteria of the photograph's design."); United States v. Villard, 885 F.2d 117, 125 (3d Cir. 1989) (rejecting the notion that the sixth Dost factor was met simply because the defendant found the photographs sexually arousing); United States v. McCarty, 672 F. Supp. 2d 1085, 1101 n.11 (D. Haw. 2009) ("The government argues that the final Dost factor requires the court to determine the intended impact [on] the pedophile viewer as opposed to an average healthy viewer. The court disagrees—the final Dost factor is not so sharply defined, and indeed would support a finding of child pornography in almost all cases.") (citation omitted); State v. Gates, 897 P.2d 1345, 1349 (Ariz. Ct. App. 1994) (commenting that a "defendant's intent cannot create a 'lewd exhibition' out of otherwise innocent activity by children"); People v. Lamborn, 708 N.E.2d 350, 355-56 (Ill. 1999) ("[W]hether defendant was aroused by the photographs is irrelevant in determining whether the photographs are lewd. A determination that a photograph constitutes child pornography focuses on the photograph itself, not on the effect that the photograph has on an individual viewer."); see also Chavin, 546 F.3d at 252 ("The sixth Dost factor is not easily adapted to a possession case."); Doe v. Chamberlin, 299 F.3d 192, 196 (3d Cir. 2002) ("The final Dost factor simply puts again the underlying question: Is the exhibition lascivious?"); United States v. Hill, 322 F. Supp. 2d 1081, 1086 (C.D. Cal. 2004) (concluding that the sixth "factor has no independent force").

Other courts have found that the sixth Dost factor applied when the defendant was, or like-minded pedophiles would be, sexually aroused by the visual depiction. See United States v. Knox, 32 F.3d 733, 747 (3d Cir. 1994) (upholding the defendant's conviction and

---

[6] The State concedes, however, that some of the sounds on the video indicated that the Defendant may have been attempting to sing along with music playing at the pool, rather than moaning or groaning. The State also points out that Deputy Coleman observed the Defendant for approximately an hour and that the video represents just a small portion of that time.

noting that the contents of the videotape, which depicted young girls wearing leotards and "dancing or gyrating in a fashion indicative of adult sexual relations," "would appeal to the lascivious interest of an audience of pedophiles"); United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir. 1987) (finding that "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles"); Dost, 636 F. Supp. at 832 (discussing applying the final factor when "[t]he combined effect of the setting, attire, pose, and emphasis on the genitals is designed to elicit a sexual response in the viewer, albeit perhaps not the 'average viewer', but perhaps in the pedophile viewer"). Additionally, we note that a panel of this Court apparently applied the sixth Dost factor in a subjective manner. See Dixon, 1998 WL 712344, at *2 (noting that the defendant's wife testified the defendant watched the video in question before engaging in sexual relations with her and that "[t]his supports the argument that the video was intended to elicit a sexual response in the viewer"). In the only other case in which this Court cited Dost, the panel found that the sixth factor was met but did not explain its rationale in coming to that conclusion. See Mayes, 2005 WL 2416620, at *10.

We agree with the State that we should at least consider the Dost factors in our analysis of whether the videotape constituted "lascivious exhibition" of the girl's pubic area; however, we are mindful that the Dost "factors are neither comprehensive nor necessarily applicable in every situation." Amirault, 173 F.3d at 32. Moreover, we conclude that the sixth Dost factor must be analyzed objectively rather than subjectively.

Sexual exploitation of a minor occurs when a defendant knowingly possesses "material that includes a minor engaged in . . . [s]exual activity." Tenn. Code Ann. § 39-17-1003(a). For the purposes of evaluating whether a defendant has committed the offense of sexual exploitation of a minor,[7] we agree with the jurisdictions that have found that the sixth Dost factor should be applied when the visual depiction is intended or designed to elicit a sexual response in the *average* viewer, rather than looking to the subjective response by the defendant. If the sixth Dost factor were analyzed by examining a defendant's subjective reaction to a visual depiction of a minor, no matter how innocent, it would be tantamount to convicting a defendant because of his "impure" thoughts. See also Amirault, 173 F.3d at 35 ("If [the defendant's] subjective reaction were relevant, a sexual deviant's quirks could turn a Sears catalog into pornography."); Villard, 885 F.2d at 125 ("If we were to conclude that the photographs were lascivious merely because [the defendant] found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand—a

_____

[7] We note that our conclusion is limited to this offense. Whether the same analysis should be employed when a defendant is convicted of especially aggravated sexual exploitation of a minor or aggravated sexual exploitation of a minor is a question for another day.

legal analysis of the sufficiency of the evidence of lasciviousness."); Adler, supra, at 952-62 (describing the circular logic that occurs when courts choose to analyze the defendant's response to the visual depiction).

The State argues that three Dost factors apply to this case—(1), (4), and (6)—and that, therefore, the videotape constitutes lascivious exhibition of the girl's pubic area. We disagree. In our view, the only Dost factor that even comes remotely close to being met is the first factor—whether the focal point of the visual depiction is on the child's genitalia or pubic area. We acknowledge that there are two times in which it appears the video is briefly focused on the blonde girl's pubic area, which is appropriately covered by her bathing suit. However, even though this one factor is marginally met, when the video is examined in the totality of the circumstances, and in light of the other Dost factors, we conclude that it does not constitute lascivious exhibition of the girl's pubic area.

The video was recorded from a lounge chair at an apartment complex swimming pool and depicts what was occurring at the pool. The setting is certainly not sexually suggestive or a place generally associated with sexual activity. The setting was a place generally associated with people swimming and playing in the pool, which is exactly what the video showed. The girl is not depicted in an unnatural pose or inappropriate attire. She was filmed at the swimming pool, wearing a bathing suit, and she was engaging in normal, everyday behavior for a child playing at a swimming pool. The girl was not posing in any particular way, nor was she acting in a way inappropriate for the setting. The girl was wearing a bathing suit, which is appropriate attire for someone at a swimming pool. Nothing in the video suggests sexual coyness or a willingness to engage in sexual activity. In our view, from the standpoint of an average objective viewer, this recording does not elicit a sexual response. Indeed, the State conceded during oral argument that, if the videotape was only found in the Defendant's possession and Deputy Coleman had not testified that he witnessed the Defendant moan and groan while making the video, it believed the evidence would not be sufficient to sustain the Defendant's conviction.

During defense counsel's closing argument, he described the Defendant's actions as "creepy." We agree with counsel's assessment but must conclude that, however creepy the Defendant's behavior was, the State failed to prove by sufficient evidence that the Defendant possessed material that included a minor engaged in sexual activity. We reverse and dismiss the Defendant's convictions for sexual exploitation of a minor.

## II. Remaining Issues

The State argues that the remaining two issues the Defendant presents in this appeal have been waived because the Defendant did not timely file his motion for new trial. We agree. "Failure to file a written motion for new trial within the required thirty days not only

-10-

results in the appellant losing the right to have a hearing on the motion, but it also deprives the appellant of the opportunity to argue on appeal any issues that were or should have been presented in the motion for new trial." State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). We also note that the Defendant does not argue that this Court should review these issues as plain error, and we decline to do so sua sponte.

## Conclusion

Based on the foregoing authorities and reasoning, we reverse and dismiss the Defendant's convictions.

_____
DAVID H. WELLES, JUDGE