**John DOE (1) and Kelly Doe (1) Parents of Jane Doe (1), Individually and as Guardians on Behalf of Minor Jane Doe (1); John Doe (2) and Kelly Doe (2), Parents of Jane Doe (2); and Kelly Doe (3), Parent of Jane Doe (3), Plaintiffs,**

v.

**William Lawson CHAMBERLIN Jr. and Kathryn Lesoine Chamberlain, his wife, Defendants.**

No. 3:CV–97–1765.

United States District Court, M.D. Pennsylvania.

April 12, 2001.

Sal Cognetti, Jr., Vincent Cimini, Foley, Cognetti & Comerford, Scranton, PA, for plaintiffs.

Michael D. Collins, Stroudsburg, PA, for William Lawson Chamberlain, Jr., Kathryn Lawson Chamberlain, defendants.

William P. O'Malley, Assist. District Attorney, Scranton, PA, for Michael J. Barrasse.

## MEMORANDUM

CAPUTO, District Judge.

This action was filed by parents of three minor girls photographed by Defendant Kathryn Lesoine Chamberlain ["Lesoine"] while partially or fully nude. (Amended Complaint, Doc. 6.) Lesoine photographed all three of the minors along with a fourth minor girl while the girls were showering in the nude under an outdoor shower at Defendants' Martha's Vineyard home. Later, Lesoine photographed Jane Doe (2) and Jane Doe (3) in her photography studio while the minors were clothed only in partially transparent material. The present action arises from these incidents and raises claims under the Protection of Children Against Sexual Exploitation Act, 18 U.S.C. §§ 2251–2259, as well as state law claims for infliction of emotional distress, invasion of privacy, and negligent supervision. (Id.)

After Plaintiff Jane Doe (3) voluntarily removed herself from the action, the court granted summary judgment against Kelly Doe (3), the mother of Jane Doe (3). (November 1, 2000 Memorandum and Order, Doc. 173.) Presently before the court is Defendants' motion for summary judgment against the remaining plaintiffs. Because the court finds, with respect to Plaintiffs' federal claims, that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law, the motion for summary judgment will be granted.

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that the moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. On the other hand, where there is a disputed issue of material fact, summary judgment will lie only if the factual dispute is not a genuine one, that is, if the evidence adduced by the parties is such that no reasonable jury could return a verdict for the nonmoving party under the governing evidentiary standard. *Id.*, 477 U.S. at 248–53, 106 S.Ct. at 2510–12.

Though a court considering a summary judgment motion need not accept conclusory allegations or denials taken from the pleadings, *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990), the court must credit the evidence of the non-movant and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*, 477 U.S. at 249, 106 S.Ct. at 2511.

### II. Protection of Children Against Sexual Exploitation Act

The heart of Plaintiffs' lawsuit is the claim that Lesoine's actions in photographing the minors violated the Protection of Children Against Sexual Exploitation Act of 1977 ["the Act"], which provides for damages against any person "who employs, uses, persuades, induces, entices or

coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251. *See also* 18 U.S.C. § 2255 (civil remedy for personal injuries). The Act defines "sexually explicit conduct" to include sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, and the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2). As it is undisputed that the photographs in question do not depict the more extreme sorts of sexual activity in the definition above, Plaintiffs claim for relief falls under the last category of sexually explicit conduct—lascivious exhibition of the genitals or pubic area.

■ In determining whether a visual depiction of a minor involves a forbidden "lascivious exhibition," the finder of fact must first make the threshold determination that the depiction "visually exhibits the genitals or pubic area" of the child. *United States v. Knox,* 32 F.3d 733, 751 (3d Cir.1994). Drawing on the ordinary and legal meanings of "exhibit," the *Knox* court defined "exhibition" as a showing, a putting on display, or a presenting for inspection or consideration. *Id.* at 744. The genitals need not be nude or even discernible through the child's clothing in order for the factfinder to conclude that they have been "exhibited." *Id.* at 750. However, where the pubic area is not visible, whether the child's genitals or pubic area is the focal point of the depiction "may play an important role in the determination of whether the child subject's genitals or pubic area are on exhibit within the meaning of the statute." *Id.* at 751.

■ Once the depiction is found to contain an exhibition of the minor's geni-

tals or pubic area, the factfinder must then apply the six factors set forth in *United States v. Dost,* 636 F.Supp. 828, 832 (S.D.Cal.1986), to decide whether the genital exhibition is "lascivious." *United States v. Villard,* 885 F.2d 117, 122 (3d Cir.1989). Those factors are (1) whether the child's genitalia or pubic area is the focus of the depiction; (2) whether the setting of the depiction is sexually suggestive or generally associated with sexual activity; (3) whether the pose or attire of the child is unnatural or inappropriate given the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the subject of the depiction exhibits sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer. *Dost,* 636 F.Supp. at 832. This list is not exhaustive, and no single factor is dispositive. *Knox,* 32 F.3d at 746 n. 10. Notably, nudity alone is not enough for "lasciviousness," since, as the Third Circuit noted, the phrase "exhibition of the genitals or pubic area" in § 2256(2) is qualified by the term "lascivious." *Villard,* 885 F.2d at 124. Indeed, the *Villard* court further explained that "more than one [*Dost*] factor must be present in order to establish lasciviousness." *Id.* at 122.

■ In the present matter, there are three sets of photographs which purportedly violate the Protection of Children Against Sexual Exploitation Act. Besides the beach photos and the studio photos which Plaintiffs have submitted to the court, (See Cimini Aff., Exs. 1–12 (beach) and 41–88A (studio), Doc. 186), Plaintiffs allege that Lesoine took additional improper photographs of Jane Doe (1) and Jane Doe (2) which cannot be located.[1] In par-

---

**1.** As Plaintiffs note, lascivious visual depictions of children need not be in the record to form the basis of a claim under the Protection of Children Against Sexual Exploitation Act. *Villard,* 885 F.2d at 125–26. A violation of the Act can be established through testimony alone. *Id.*

ticular, Jane Doe (1) claims that Lesoine took photographs of her in Lesoine's studio wearing only tuxedo pants and an open tuxedo jacket. (Aff. of Jane Doe (1), Doc. 184 ¶ 11.) Further, both girls allege that Lesoine took in-studio photographs of them while they were wearing only transparent material. (Id. ¶ 12; Aff. of Jane Doe (2), Doc. 18 ¶¶ 11.) With respect to each of the photos in these three groups, the court concludes that no reasonable jury could find by a preponderance of the evidence that the photo depicts a "lascivious exhibition of the genitals or pubic area of any person."

### A. The Beach Photographs

■ The sixteen beach photos at issue in the case are contained in Exhibits 1–12 of the 88 photo exhibits submitted by Plaintiffs.[2] (See Doc. 186, Ex. 1–12.) In Exhibits 1, 4, 7A, 7B, 8A, and 11A, the photos do not satisfy the threshold requirement that they depict an "exhibition" of the genitals or pubic area. Either because the minors are turned away from the camera or because their pubic areas are obscured by shadow or by one of the other minors, no pubic area is visible in any of these six photographs. Nor is the obscured pubic area of any of the girls the focal point of any picture. Therefore, because no reasonable jury could find that these six photographs contain an "exhibi-

tion of the genitals or pubic area of any person," there is no need for the court reach the issue of lasciviousness.[3]

In the remaining ten beach photographs, the pubic area of at least one of the minor girls is at least slightly discernible. Consequently, a jury could reasonably find that there has been an "exhibition" of a person's pubic area. However, these photos are decidedly innocent in appearance, and it would be unreasonable for any jury to conclude that any such exhibition is "lascivious" within the meaning of the statute.

■ Applying the first *Dost* factor, the court notes that the pubic areas of the minors, in the instances in which they are visible, are not the focal point of any photograph. There are no close-ups among the photos, and the focal point of many of the shots appears to be the stream of water falling into the midst of the girls from a shower head affixed to the side of a house or similar structure. The four minor girls are huddled in a circle facing the water streaming through the center of the group. In some of the photographs, one or more of the girls has her face turned upward to catch the falling water. If the stream of water is not the focal point of a particular photograph, there likely is no focal point, unless, perhaps, it is the face of a minor who is looking into the camera.

---

**2.** Some of exhibits contain two photos of reduced size which the court will refer to as "A" and "B"; e.g., Exhibits 7A and 7B. Many of these smaller photos appear to be reductions of other, full-sized photos contained in the record.

**3.** In addition to the shower photos, Lesoine took one other contested photo of the minors at Martha's Vineyard. Exhibit 88B is a photograph of three of the minors in the ocean with only their backsides protruding from the water. In the vernacular, the minors appear to be "mooning" the camera. The identities of the three minors cannot be determined

from the photo and, because the photo seems to have been taken a distance with little or no magnification, no pubic area is discernible. Consequently, Exhibit 88B also fails the threshold requirement that the depiction contain a pubic area exhibition.

Even if the picture contained the requisite "exhibition," that exhibition would not be lascivious. Except for the fact that the minors are swimming in the nude, none of the *Dost* factors—the focus of the photo, the setting, the coyness *vel non* of the subjects or their pose—militate against a finding of lasciviousness. This picture was undoubtedly intended to be jocular rather than sexually provocative.

In any event, there is nothing about any of the beach photos that would tend to draw the eye to the pubic area of any of the minors. The first *Dost* factor—whether a person's pubic area is the focal point of the depiction—cuts against a finding of lasciviousness.

The second *Dost* factor—whether the setting is sexually suggestive or generally associated with sexual activity—provides little support for the conclusion that the photos are lascivious. The court is of the opinion that shower facilities, especially outdoor showers, are not generally associated with sexual activity. However, because it is possible that a reasonable jury could believe that showers have some association with sexual activity, the court concludes that the setting of the photographs provides some minimal support for a finding of lasciviousness.

The third *Dost* factor requires that the factfinder consider whether the pose or attire of the minors is inappropriate or sexually suggestive given their age. Where the minor is naked, however, "the issue of the appropriateness of the attire does not arise." *Villard*, 885 F.2d at 124. As the minors are nude in the beach photos, the only question under the fourth factor is whether they have been posed. In general, the minors are standing very naturally with their bodies and legs straight and with their feet close together. Three of the four girls are standing in the position most people would adopt while showering. However, Plaintiffs argue that the photographs depict the minor girl who was never a party to this lawsuit ["Jane Doe (4)"] standing in a coy or sexually suggestive manner, since in many photos

her right knee is bent and her right heel raised slightly.

While Jane Doe (4)'s stance arguably could be considered a pose, and perhaps even a sexually suggestive one, it is not necessary to decide the question in this case. Because the pubic area of Jane Doe (4) is not visible in any of the beach photographs, there is no "exhibition" of her genitals or pubic area. Consequently, the depictions of Jane Doe (4) in the beach photos cannot constitute "lascivious exhibition[s]." Nor can Jane Doe (4)'s stance, if it is indeed suggestive, make the exhibition of another minor's pubic area lascivious and thus "sexually explicit conduct" within the meaning § 2256. While the pubic areas of Jane Doe (3) and possibly Jane Doe (2) are visible in certain shots, these two minors are not touching, gazing at, or otherwise interacting with Jane Doe (4) in any photograph. Jane Doe (1) and Jane Doe (2) are not posed in any way, and nothing about them other than their nudity is suggestive of sexuality or sexual activity. The innocent nudity of one person cannot, as a matter of law, be made "lascivious" by the suggestive pose of another person who simply happens to be part of the same visual depiction. Unless it appears that there is a sexually suggestive relationship or interaction between the persons, there is no "sexually explicit conduct" where one subject's pubic area is exhibited and another subject is posed or is acting in a sexually suggestive manner. Accordingly, even if it is reasonable to conclude that Jane Doe (4) is posed in an inappropriate or suggestive manner, such a conclusion would not support a finding that the genitals or pubic area of another minor are lasciviously exhibited in one of the beach photographs.[4]

---

4. This is not to say that a minor plaintiff lacks a cause of action under the Act unless he himself is depicted engaging in a "lascivious exhibition." § 2256(2) defines sexual conduct to include the "lascivious exhibition of the genitals or pubic area *of any person*." 18

U.S.C. § 2256(2)(E) (emphasis added). If *any person* in the visual depiction is engaged in a lascivious exhibition, the depiction takes on a pornographic character and the minor is injured simply by being part of a pornographic depiction. This is true even if the minor is

The fourth *Dost* factor is whether the child is fully or partially clothed, or nude. While the nudity of the minors in the beach photographs does tend to support a finding of lasciviousness, it bears repeating that nudity alone is not enough to establish lasciviousness. *See Villard*, 885 F.2d at 124.

The fifth *Dost* factor—whether the subject of the depiction exhibits sexual coyness or a willingness to engage in sexual conduct—is a particularly important one. In the beach photos, three of the four girls appear completely innocent. They are depicted splashing water or laughing in a manner appropriate to their age, without a hint of sexual coyness. However, some viewers of the photos could form the impression that Jane Doe (4) was acting in a coy manner when the photos were shot. In Exhibits 2, 5, 8A, and 11B, Jane Doe (4) has the tip of one of her fingers in her mouth as she looks directly into the camera. While the court doubts that this was intended to be sexual, it would not be unreasonable for a juror to conclude otherwise, especially in light of Jane Doe (4)'s stance, discussed above. But just as with Jane Doe (4)'s stance, her possibly coy expression cannot make the exhibition of another minor's pubic area "lascivious." Because Jane Doe (4) does not appear to be touching or otherwise interacting with Jane Doe (2) or Jane Doe (3), her sexual coyness in the photo, if such there is,

cannot raise their innocent nudity to the level of "sexually explicit conduct." Consequently, as Jane Doe (2) and Jane Doe (3) do not exhibit any sexual coyness or willingness to engage in sexual conduct, the fifth *Dost* factor does not weigh in favor of a finding of lasciviousness

The final *Dost* factor is whether the visual depiction is intended or designed to elicit a sexual response in the viewer. However, as the *Villard* court noted, this factor is not a separate substantive inquiry concerning the photographs, but is simply "another way of inquiring into whether any of the other five *Dost* factors are met." 885 F.2d at 125. Of the five substantive *Dost* factors for determining whether any "exhibition of the genitals or pubic area" is lascivious, only one factor—the nudity of the subjects—is present with any force. However, as has been emphasized above, nudity alone is not enough for lasciviousness. Further, the one additional factor that provides a bit of support for a finding of lasciviousness—the possible sexual suggestiveness of the beach shower setting—is not enough to make such a finding reasonable.

 While it may have been inappropriate for Lesoine to take these photographs without the permission of the minors' parents, it is equally certain that the photos are not sexual in nature and cannot be considered depictions of "sexually ex-

---

himself fully clothed and without the taint of sexual suggestiveness. As the Third Circuit has noted,

> The use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child. . . . Since the child's image is permanently recorded, the pornography may haunt him or her for a lifetime because the child will be aware that the offensive photograph or film is circulating through the masses.

*Knox*, 32 F.3d at 749 (citations omitted). Accordingly, a minor is harmed and may bring

suit under the Act whenever he is made a part of a visual depiction in which "any person" is engaged in sexually explicit conduct.

However, while the minor himself need not be engaged in a "lascivious exhibition", *some person* in the depiction must be engaged in such an exhibition before the minor may bring suit under the Act. In the present case, the court only concludes that, where the sexually suggestive character of one subject in a depiction is completely unrelated to the innocent nudity of another subject, there is no "lascivious exhibition of the genitals or pubic area *of any person*" as a matter of law.

plicit conduct" within the meaning of the Protection of Children Against Sexual Exploitation Act. That statute is " 'directed at the hard core of child pornography' which results in leaving an indelible psychological scar on the exploited child." *Knox,* 32 F.3d at 752 (quoting *New York v. Ferber,* 458 U.S. 747, 758, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982)). It is the unavoidable conclusion of common sense as well as of the law that Lesoine's beach photographs fall outside of the Act's purview. Therefore, because any conclusion to the contrary would be unreasonable, Defendants' motion for summary judgment will be granted with respect to the beach photographs.

### B. The Studio Photographs Before the Court

. ▮ Turning to the studio photographs of Jane Doe (2) and Jane Doe (3), *see* Doc. 186, Exs. 41–88A, the court notes at the outset that all but three of the photographs do not meet the threshold requirement that there be an exhibition of the genitals or pubic area of some person. *See Knox,* 32 F.3d at 751. In only three photographs, Exhibits 41A, 43B, and 64B, is the pubic area of one of the minor girls discernible through their partially translucent clothing.[5] Nor is the obscured pubic area of one of the girls the focal point of any of the remaining photos. There are no close-ups of a pubic area, and no prop, pose or other device draws the eye to the pubic area of one of the minors. Therefore, of the studio photographs in the record, only the three photos listed above could be thought to contain an "exhibition of the genitals or pubic area of any person."

▮ Even if the court gives Plaintiffs the benefit of the doubt that these three photos contain the necessary "exhibitions," as it should on Defendants' motion for summary judgment, the pubic area exhibitions in Exhibits 41A, 43B and 64B cannot reasonably be deemed "lascivious" within the meaning of the statute. Turning to the first *Dost* factor, it is apparent that the pubic area exhibited in each photo is not the focus of the depiction. Indeed, in all three photos the pubic area in question, though somewhat discernible, is partially obscured by the material in which the minors are clothed. Moreover, the photographer did not move the minors' legs apart to emphasize or expose their pubic areas, nor did she use lighting, props or other devices to draw the viewer's attention to the pubic area of either subject. There is simply no basis in the depictions themselves for concluding that the pubic area of either girl is the focal point of any of the three photographs.

While the fact that the minors' are clad only in swaths of translucent material supports a finding of lasciviousness—the three remaining substantive *Dost* factors cut the other way. The setting of the photos is not sexually suggestive; the minors appear before a white paper background typical of studio photography. Nor do the minors exhibit any sexual coyness or willingness to engage in sexual activity. For instance, in Exhibit 41A Jane Doe (2) displays a smile appropriate to a family photograph, and in Exhibit 64 the girls appear to be laughing innocently and unaffectedly, as if at a joke.

Finally, the minors are not posed in an unnatural or sexually suggestive way. For

---

5. In fact, the court is unsure whether or not the pubic area of Jane Doe (2) is at all visible in Exhibit 64B. However, because it is not absolutely certain that a jury would be unreasonable in finding that the photo contained an "exhibition" of Jane Doe (2)'s pubic area, the court will draw the inference in Plaintiffs' favor and conclude that such an exhibition is present in Exhibit 64B.

example, in Exhibit 41A, Jane Doe (2) is standing upright with an end of the translucent material in each hand. Although she is holding one end at arm's length and has her head tilted slightly to one side, there is nothing sexually suggestive about her pose. It is safe to say that if Jane Doe (2) were clothed in a normal long dress rather than in translucent material, there would be nothing untoward in her appearance. Such a pose is commonplace in the ballroom dancing context, where, for example, it is not unusual for a woman to hold the hem of her dress at arm's length while dancing a waltz. The problem with the depiction of Jane Doe (2) in Exhibit 41 is not her pose, but the fact that she is clad in transparent clothing. As for the poses themselves, they do not support a finding of lasciviousness.[6]

■ The court is confident that, with the exception of the transparent clothing that renders the minors partially nude, none of the *Dost* factors are applicable to the three questionable studio photographs in the record. But transparent clothing, without more, is simply not enough to justify a finding of lasciviousness. As the Third Circuit has held, "more than one factor must be present in order to establish lasciviousness." *Villard*, 885 F.2d at 122. Therefore the court concludes that no reasonable jury could find that the studio photos submitted by Plaintiffs depict "sexually explicit conduct" under the Act.

This conclusion is bolstered by the overall character and "feel" of the studio photos, which simply do not appear to be intended or designed to elicit a sexual response in the viewer. *See Dost*, 636 F.Supp. at 832 (sixth factor). Rather, the studio photographs appear to be an attempt to create photographic images with artistic value. In the first place, the pho-

tographs were taken in black and white, a mode which has been strongly associated with photographic art due to the work of the great American artist Ansel Adams. Second, the translucent material in which the minors are draped seems intended to lend a lightly fanciful or whimsical character to the photographs. Finally, Exhibit 43 has been given an "artistically" grainy appearance which makes it vaguely reminiscent of a pencil sketch. While the artistry of the photos is certainly debatable, it seems beyond debate that these shots were intended to be art and were not designed to appeal to the sexual appetites of the pedophile. Accordingly, Defendants' motion for summary judgment will be granted with respect to the studio photos that have been made part of the record.

### C. The Unavailable Studio Photographs

■ Both Jane Doe (1) and Jane Doe (2) allege that Lesoine took additional photographs of them in her studio which violated the Protection of Children Against Sexual Exploitation Act and which now cannot be located. In support of these claims, Plaintiffs point the court to the affidavits of the two minors. (See Br., Doc. 177 at 22; Affs., Docs. 181 ¶ 11, 184 ¶¶ 11–12.) The first allegation of Jane Doe (1)—that she was photographed wearing only a tuxedo pants and jacket—is easily dismissed for failure to meet the threshold requirement that the depiction contain an exhibition of some person's genitals or pubic area. (See Aff. of Jane Doe (1), Doc. 184 ¶ 11.) However, Jane Doe (1) also alleges that Lesoine took other photos of her that are not part of the record:

> In these photographs I was lying down alone on a day bed/lounge chair completely naked but for a very thin, see-

---

**6.** This reasoning is equally applicable to Exhibits 43B and 64B: were the minors proper-

ly attired, there would be nothing suggestive of sexuality in either one's pose or demeanor.

through piece of material. For these pictures I posed in various positions. At times my arms were over my head and at other times they were in front of me. . . . At all times the front part of my body, including my pubic area, was facing the camera. Defendant Lesoine was located approximately 6 to 8 feet from me while taking these photographs. While Defendant Lesoine [w]as taking these photographs she assured me that this was "fun" and told me to "play with the camera." I have never seen the negatives or prints of these pictures.

(Id. ¶ 12.) Jane Doe (2), for her part, alleges that similar photographs were taken of her:

In these photographs I was lying on the floor completely nude except for a see-through piece of material. I posed in various positions for these pictures. . . . My pubic area was facing the camera which was approximately eight feet from where I was lying. I have never seen the negatives or prints of these pictures.

(Aff. of Jane Doe (2), Doc. 181 ¶ 11.) Neither minor indicated when these photographs were taken, nor whether the two sets of photos were taken on the same occasion.

Plaintiffs correctly note that a "lascivious exhibition" may be established by testimonial evidence even in the absence of the visual depictions themselves. *See Villard*, 885 F.2d at 125. However, the *Villard* court found that the evidence in that case "lacked sufficient detail in many important respects, and raised the distinct possibility that the jury may have made a finding of lasciviousness based on conjecture or imagination rather than fact." *Id.* at 126. Consequently, the court of appeals affirmed the district court's conclusion that the evidence was insufficient to support a finding that the photographs in question contained a "lascivious exhibition of the genitals or pubic area." *Id.*

In the present case, the affidavit testimony of the minors is too vague and incomplete to support a finding that any of the photos in question contained a "lascivious exhibition." Right away the factfinder is faced with the problem of determining whether any of the photos even depicted an "exhibition" of the minor's genitals or pubic area. While the minors stated that they were wearing transparent material at the time the shots were taken, it does not necessarily follow that their pubic areas were ever visible in the resulting pictures. For example, in the vast majority of the studio photographs in the record, the subjects' pubic areas are not visible despite the fact that the subjects were clothed only in transparent material. Factors such as the lighting, the pose adopted by the subject, and the number of times the material is wrapped around the subject undoubtedly contribute to whether the subject's pubic area is discernible. Further, it is unclear from Plaintiffs' evidence whether or not the camera was focused on the subjects' pubic areas. To allow a jury to decide whether or not there has been an "exhibition" of a person's pubic area based on the evidence adduced by Plaintiffs would be to allow the jury to make its finding "based on conjecture or imagination rather than fact." *See id.*

Likewise, the evidence adduced by Plaintiffs is insufficient to support a finding of lasciviousness by a preponderance of the evidence. Like the trial court in *Villard*, this court is concerned about the many details that are *not* part of Plaintiffs' evidence. *See Villard, 885 F.2d at 125* (quoting *United States v. Villard*, 700 F.Supp. 803, 813 (D.N.J.1988)). Among the many unanswered questions are the following ones that troubled the trial court in *Villard:*

For example, from what perspective was the individual photographed? Was it from above, or level with the camera? Was the subject lying on his side, back,

or stomach? Was the camera positioned over his shoulder, behind his head or squarely between his legs? Were the genitals in the foreground or the background of the picture? Were they in strong light, subdued light, or shadow? ... Were [the subject's knees] apart or together? Did they partially obscure the genitals, or accentuate them? Where were his arms and hands? Was the photo taken in natural light? Was it taken during the day or at night? Had the subject been posed or did it appear to be a candid shot?

885 F.2d at 125. As in *Villard*, there is no evidence here regarding whether the subject displayed any sexual coyness or was posed in a sexually suggestive manner. In *Villard*, such evidentiary gaps led the court to conclude that the evidence was insufficient to support a finding that the photos depicted a "lascivious exhibition", despite the fact that the minor boy was not only nude, but also had a visible partial erection. Thus, while the present case differs from *Villard* in that the reasonable doubt standard does not apply, the evidence adduced here is significantly less compelling. Therefore, just as in *Villard*, the evidence here is insufficient to support a finding that the absent pictures are lascivious.

The lack of detail in Plaintiffs' evidence means that a jury could find that there was a "lascivious exhibition" only by means of "conjecture or imagination rather than fact." Because such a finding would be unreasonable even under the preponderance of the evidence standard, Defendants' motion for summary judgment will be granted with respect to the studio photographs that are not part of the record.[7]

### III. State Law Claims

■ Defendants have also moved for summary judgment on Plaintiffs' state law claims of infliction of emotional distress, invasion of privacy, and negligent supervision. (Motion, Doc. 123 ¶¶ 2–4.) This court may not grant summary judgment, however, because it must decline to exercise jurisdiction over Plaintiffs' state law claims. Once this court grants Defendants' motion for summary judgment on Plaintiffs' federal claims, this case will become a state law dispute between non-diverse parties. While the court will pos-

7. Plaintiffs state in their brief that "Jane Doe (1) and Jane Doe (2) are prepared to present to the jury sufficient detail and provide an adequate factual description on the important factors relative to the photographs which will conclusively establish that these pictures contain sexually explicit conduct. Plaintiffs are confident that a jury, based upon the girls' own verbal description, rather than conjecture or imagination, will comfortably be in a position to make a finding of lasciviousness." (Brief, Doc. 177 at 22.) As this passage indicates, Plaintiffs misunderstand their burden in responding to Defendants' motion for summary judgment.

Defendants are entitled to summary judgment if the evidence adduced by the parties is such that no reasonable jury could return a verdict for Plaintiffs under the governing evidentiary standard. *Anderson*, 477 U.S. at 248–53, 106 S.Ct. at 2510–12. Because Plaintiffs would have the burden at trial of proving by a preponderance of the evidence that the absent photographs contained a lascivious exhibition, Plaintiffs in responding to the instant motion must point the court to sufficient competent evidence to enable a reasonable jury to conclude that Plaintiffs have met this burden. Summary judgment cannot be avoided simply by promising to present sufficient evidence at trial, since the very purpose of summary judgment is to ensure that a trial is warranted.

Plaintiffs have not produced sufficient evidence that any of Lesoine's photos depicts a "lascivious exhibition." Therefore the court concludes that "[t]he moving [parties are] entitled to a judgment as a matter of law because the nonmoving [parties have] failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

sess jurisdiction over these state law claims under 28 U.S.C. § 1367(a), section 1367(c)(3) provides that the court may decline to exercise its jurisdiction once it has dismissed all claims over which it has original jurisdiction. Further, the Third Circuit has held that, "where the claim over which the district court has original jurisdiction is dismissed before trial, the trial court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir.2000) (emphasis in the original) (citations and internal quotes omitted). As there is no affirmative reason to retain supplemental jurisdiction in the present case, the court will dismiss Plaintiffs' remaining claims for lack of subject matter jurisdiction.[8]

## IV. Conclusion

Because Congress crafted the Protection of Children Against Sexual Exploitation Act to combat the hard core of child pornography, both Congress and the courts have carefully delineated its scope so that its harsh criminal and civil penalties are imposed only in appropriate cases. The court emphasizes that its holding in this case is limited to the conclusion that Lesoine has not violated the provisions of the Protection of Children Against Sexual Exploitation Act. Today's decision should not be construed to approve Lesoine's actions in photographing minor girls in the nude without the knowledge or permission of their parents, nor to express or imply any opinion on the legality of those actions under state law. The court today simply concludes that Plaintiffs are not entitled to relief under the federal child pornography statute.[9]

---

8. The court recognizes that it exercised supplemental jurisdiction over the state law claims of Kelly Doe (3) when it granted partial summary judgment to Defendants on November 1, 2000. However, at that time there were still federal claims in the case. Now that the court is rendering summary judgment to Defendants on all of Plaintiffs' federal claims, this court is compelled to decline jurisdiction over the remaining state claims in the absence of an affirmative justification for deciding the claims. *See Musco*, 204 F.3d at 123. Further, while considerations of judicial economy provide an affirmative reason not to vacate the court's order of November 1, 2000, such considerations do not apply to the remaining state law claims.

9. Because the court will grant summary judgment to Defendants on Count I of the Amended Complaint, Defendants' motion for partial summary judgment with respect to Count I will be denied as moot. (See Motion, Doc. 87.) Defendants also moved to strike portions of the evidence submitted by Plaintiffs in opposition to the summary judgment motions. (See Doc. 198.) As summary judgment is appropriate in light of all the relevant evidence submitted to the court, Defendants' motion will be denied. However, it will be denied without prejudice to their right to renew the motion in the event the case should eventually proceed to trial.