The PEOPLE of the State of Colorado, Plaintiff–Appellant and Cross–Appellee,

v.

James Stephen GRADY, Defendant–Appellee and Cross–Appellant.

No. 03CA0830.

Colorado Court of Appeals, Div. A.

May 19, 2005.

Certiorari Denied Jan. 9, 2006.*

---

* Justice HOBBS and Justice BENDER would grant as to the following issue:

Whether the proper jury instruction for the definition of "erotic nudity" as found in the "sexual exploitation of children" statute, § 18-6-403, C.R.S.(2004), is that given by the trial court, or as rephrased by the court of appeals, and in particular whether the definition of "erotic nudity" contains an objective standard of "sexual gratification or stimulation" of one or more of the persons involved.

Carol Chambers, District Attorney, Paul R. Wolff, Chief Deputy District Attorney, Englewood, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Miller & Steiert, P.C., Andrew J. Contiguglia, Lia A. Fazzone, Littleton, Colorado, for Defendant–Appellee and Cross–Appellant.

METZGER **, J.

The People seek review of the trial court's ruling and jury instructions concerning the elements of the charge of sexual exploitation of a child. We disapprove the ruling.

Defendant, James Stephen Grady, was charged with thirty-nine counts of sexual exploitation of a child based on photographs seized in a search of his photography studio and on photographs appearing on his website, "True Teen Babes."

Defendant was charged with violations of § 18–6–403(3), C.R.S.2004, which provides:

A person commits sexual exploitation of a child if, for any purpose, he or she knowingly:

(a) Causes, induces, entices, or permits a child to engage in, or be used for, any explicit sexual conduct for the making of any sexually exploitative material; or

(b) Prepares, arranges for, publishes, including but not limited to publishing through digital or electronic means, produces, promotes, makes, sells, finances, offers, exhibits, advertises, deals in, or distributes, including but not limited to distributing through digital or electronic means, any sexually exploitative material; or

(b.5) Possesses or controls any sexually exploitative material for any purpose ... [or]

(c) Possesses with the intent to deal in, sell, or distribute, including but not limited to distributing through digital or electronic means, any sexually exploitative material ....

Under § 18–6–403(2)(j), C.R.S.2004, "sexually exploitative material" includes photographs of "a child engaged in, participating in, observing, or being used for explicit sexual conduct."

"Explicit sexual conduct," under § 18–6–403(2)(e), C.R.S.2004, includes "erotic nudity."

"Erotic nudity" is defined in § 18–6–403(2)(d), C.R.S.2004, as

the display of the human male or female genitals or pubic area, the undeveloped or developing genitals or pubic area of the human male or female child, the human breasts, or the undeveloped or developing breast area of the human child, for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved.

Before trial, defendant filed a motion to dismiss the charges, arguing that § 18–6–403, C.R.S.2004, is unconstitutional on its face and, as applied to him, is overbroad and vague. He asserted that § 18–6–403 unconstitutionally attempts to regulate the content of his "protected speech and expression." Defendant also contended that the statute is vague because it fails to provide notice that taking and distributing the "glamour photographs" constitute criminal conduct. Specifically, defendant argued that, in defining "erotic nudity," the statute failed to define the phrases "overt sexual gratification" and "for one or more of the persons involved."

Following a hearing, the trial court ruled that, under *People v. Batchelor*, 800 P.2d 599 (Colo.1990), the statute was constitutional. The court further determined that interpreting the requirement in the definition of "erotic nudity" that the material be "for the

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2004.

purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved" objectively, that is, as referring to the sexual gratification of the viewers of the photographs, would render it unconstitutional and "cross over the line into the thought police." However, the court held that defining the phrase subjectively, so as to refer only to the sexual gratification of the defendant, would preserve the statute's constitutionality. The court then instructed the jury accordingly.

Defendant was acquitted of all charges.

■ The People contend· the trial court erred in adopting a subjective test to define "erotic nudity" and in instructing the jury according to that definition. They argue that defining "sexual gratification or stimulation of one or more of the persons involved" objectively, so as to include a reasonable viewer of sexual materials that have been distributed, furthers the legislative intent of protecting children from sexual exploitation. Defendant counters that, if the phrase were so defined, the statute would be unconstitutionally overbroad and vague. He argues that the trial court was correct in ruling that the prosecution had to prove that the pictures were taken for the purpose of his own sexual gratification. We agree with the People.

■ If, as here, a question of law is involved, then the People have the authority to appeal the decision. *People v. Gonzales,* 666 P.2d 123 (Colo.1983).

■ The interpretation of a statute is a question of law subject to de novo review. *Hendricks v. People,* 10 P.3d 1231 (Colo. 2000); *People v. Pierrie,* 30 P.3d 816 (Colo. App.2001).

The fundamental responsibility of the court in construing a statute is to give effect to the General Assembly's purpose or intent in enacting the statute. *Martin v. People,* 27 P.3d 846 (Colo.2001); *Beth Israel Hosp. & Geriatric Ctr. v. Dist. Court,* 683 P.2d 343, 345 (Colo.1984). To determine such intent, we look first to the language of the statute itself, giving the words and phrases used their plain and ordinary meaning. *Vega v. People,* 893 P.2d 107 (Colo.1995); *People v.*

*Garcia,* 189 Colo. 347, 541 P.2d 687 (1975). If the statutory language is clear and unambiguous, it must be interpreted as written, without resort to interpretive rules and statutory construction. *People v. Zapotocky,* 869 P.2d 1234 (Colo.1994).

■ A legislative policy declaration at the outset of the legislation may serve as a guide to legislative intent. *People v. Trujillo,* 983 P.2d 124 (Colo.App.1999). We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that defeats the legislative intent or leads to an unreasonable or absurd result. *People v. Nara,* 964 P.2d 578 (Colo.App. 1998).

The legislative intent is expressed in § 18–6–403 as follows:

(1) The general assembly hereby finds and declares: That the sexual exploitation of children constitutes a wrongful invasion of the child's right of privacy and results in social, developmental, and emotional injury to the child; that a child below the age of eighteen years is incapable of giving informed consent to the use of his or her body for a sexual purpose; and that to protect children from sexual exploitation it is necessary to prohibit the production of material. which involves or is derived from such exploitation and to exclude all such material from the channels of trade and commerce.

(1.5) The general assembly further finds and declares that the mere possession or control of any sexually exploitative material results in continuing victimization of our children by the fact that such material is a permanent record of an act or acts of sexual abuse of a child; that each time such material is shown or viewed, the child is harmed; that such material is used to break down the will and resistance of other children to encourage them to participate in similar acts of sexual abuse; that laws banning the production and distribution of such material are insufficient to halt this abuse; that in order to stop the sexual exploitation and abuse of our children, it is necessary for the state to ban the posses-

sion of any sexually exploitative materials; and that the state has a compelling interest in outlawing the possession of any sexually exploitative materials in order to protect society as a whole, and particularly the privacy, health, and emotional welfare of its children.

■ The prevention of sexual exploitation and abuse of children constitutes a government objective of paramount importance. *People v. Smith,* 347 Ill.App.3d 446, 282 Ill. Dec. 674, 806 N.E.2d 1262 (2004)(citing *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). Thus, the production and possession of such material is not entitled to First Amendment protection if the conduct so proscribed is adequately defined. *See New York v. Ferber, supra.*

"Involved" is defined as "being affected or implicated." *Webster's Third New International Dictionary* 1191 (1986).

In *People v. Batchelor, supra,* 800 P.2d at 604, the supreme court noted, "The person (or persons) 'involved' are not always depicted in the material. It follows that if the sexual gratification is of a person not in the material, the sexual gratification of that person need not be shown in the material."

In *People v. Gagnon,* 997 P.2d 1278 (Colo. App.1999), a division of this court determined that, to convict a defendant of sexual exploitation of a child under § 18–6–403(2)(d), two conditions must be met: (1) the picture must display human genitals or breasts (2) for the purpose of real or simulated sexual gratification or stimulation of one or more of the persons involved. The division found that "the obvious intent was to elicit a sexual response in the *viewer.*" *People v. Gagnon, supra,* 997 P.2d at 1283 (emphasis added).

In both *People v. Batchelor, supra,* and *People v. Gagnon, supra,* the defendant did not distribute the sexually explicit material, but kept it for himself. Therefore, the prosecution was required to prove only that the defendant, the person who took the photographs and possessed the material, was "involved." However, in cases where, as here, the charge includes not only production but also distribution of sexually explicit material, by definition other persons will be affected or

implicated. These viewers are the ones for whom the material is produced or to whom the material is distributed.

The legislative intent seeks to protect children from sexual exploitation and specifically finds it necessary "to prohibit the production of material which involves or is derived from such exploitation and to exclude all such material from the channels of trade and commerce." It would contravene this legislative intent to say that "sexual gratification of one or more of the persons involved" applies only subjectively to the creator of sexually explicit material when that material is produced for others or intended for distribution. *Cf. People v. St. James,* 75 P.3d 1122 (Colo.App. 2002); *People v. Spurlock,* 114 Cal.App.4th 1122, 8 Cal.Rptr.3d 372 (2003). *See generally* Benjamin J. Vernia, Annotation, *Validity, Construction and Application of State Statutes or Ordinances Regulating Sexual Performance by Child,* 42 A.L.R.5th 291 (1996).

We reject defendant's argument that extending the meaning of "involved" objectively to others who view such material would render the statute unconstitutionally vague and overbroad. The constitutionality of § 18–6–403, both on its face and as applied, is preserved by the requirement that both conditions must be met. Thus, the People must prove that a person knowingly took sexually explicit photographs of a child *and* that the content of those photographs, viewed objectively, would lead to sexual gratification or stimulation of a reasonable viewer. *People v. Gagnon, supra.*

Defendant's reliance on *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), is misplaced. In finding a statute banning virtual child pornography to be unconstitutional, the Supreme Court emphasized that it is the government's interest in preventing physical and psychological harm arising from the use of real children in child pornography that underlies the exemption of child pornography from First Amendment protection. Speculative harm arising from viewing virtual models was not sufficient to save the ban on such material. Here, in contrast, the sexual exploitation of a child statute prohibits exploitation of live children and seeks to protect

them from the harm that results from such exploitation. Thus, *Free Speech Coalition* is inapposite. *See People v. Campbell,* 94 P.3d 1186 (Colo.App.2004).

Defendant here produced "glamour photographs" of models, ages thirteen to seventeen. The photographs were not only intended for modeling portfolios, but defendant also posted the photographs on his web site, titled "True Teen Babes," devoted to pictures of the teen models. Website viewers were "involved" by being affected or implicated. Thus, the jury should have been instructed to consider whether the content of the photographs, viewed objectively, would lead to the sexual gratification or stimulation of a reasonable viewer. Therefore, the trial court erred in its ruling limiting the scope of the statute subjectively to defendant.

The ruling is disapproved.

Chief Judge DAVIDSON and Judge CRISWELL** concur.