COLORADO COURT OF APPEALS                                    **2017COA76**

Court of Appeals No. 14CA0014
El Paso County District Court No. 12CR1808
Honorable David A. Gilbert, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David Allan Henley,

Defendant-Appellant.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE J. JONES
Graham and Welling, JJ., concur

Announced June 1, 2017

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Jud Lohnes, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, David Allan Henley, appeals the district court's judgment of conviction entered on jury verdicts finding him guilty of twenty-two counts of sexual exploitation of a child (possession of materials) and one count of sexual exploitation of a child (possession of more than twenty items).  He also appeals the district court's related habitual criminal adjudications.  We vacate defendant's convictions and adjudications because there is insufficient evidence that the photographs on which the charges are based constitute "erotic nudity" so as to qualify as "sexually exploitative material" under the charging statute, section 18-6-403, C.R.S. 2016.  In so concluding, we hold that images which, when viewed objectively, aren't "erotic nudity" don't become so merely because a particular person — one not involved in the creation or distribution of the images — looks at them for the purpose of personal sexual gratification.

## I.  Background

¶ 2    Defendant's community college classmate saw him looking at what appeared to be pictures of clothed children in "sexual" poses on his laptop computer during class.  The classmate reported this to the teacher and to police.

¶ 3    A detective searched defendant's computer and found over ninety images that he thought were sexually exploitative.  He also discovered that the computer had been used to search the Internet for "preteen girl pics" and "preteen sluts."

¶ 4    The People charged defendant with twenty-five counts of sexual exploitation of a child under section 18-6-403(3)(b.5) for twenty-five of the individual images (charged images), and one count of sexual exploitation of a child (possession of more than twenty items) under section 18-6-403(3)(b.5), (5)(b)(II).[1]

¶ 5    The charged images show fully or partially naked children (sometimes accompanied by adults) talking to others, walking outside, standing outside, posing in costume, or participating in activities like body painting and playing games.

¶ 6    Before trial, defense counsel moved to prohibit the prosecutor from introducing the other images that the detective had found on defendant's computer (uncharged images), arguing that they could confuse the jury and were unduly prejudicial.  (These images were of provocatively dressed children (posed suggestively) and naked

---

[1] The People also charged defendant with six habitual criminal counts based on previous felony convictions.

adults.)  The court asked the prosecutor why the uncharged images were relevant.  The prosecutor responded that because the charged images were "nudist photographs" that "in and of themselves would not qualify as exploitative," the uncharged images were relevant to show that defendant looked at the charged images for his personal sexual gratification.  He said defendant's purpose in looking at the charged images "makes them exploitative images."

¶ 7     The district court apparently agreed with the prosecutor.  It said it would allow the prosecutor to introduce the uncharged images because "this does constitute res gestae," and the uncharged images would "provid[e] the context within which items are found."  It concluded, "I find there would be potential relevance to show intent here."

¶ 8     During trial, the prosecutor introduced the charged and uncharged images into evidence.  As well, defendant's classmate testified as to what he'd seen on defendant's computer, and the detective testified as to the images he'd found on defendant's computer and defendant's use of the search terms "preteen girl pics" and "preteen sluts."

¶ 9    In closing argument to the jury, the prosecutor focused on defendant's purpose in looking at the charged images, arguing that defendant's purpose was "sexual," as demonstrated by the Internet search terms and the uncharged images.[2]  In addressing whether the charged images were "erotic nudity," the prosecutor acknowledged that "[y]ou [the jurors] are going to say to yourselves these are nudist camp photographs.  Pictures of naked children.  Doing things that are not sexual."  But, he argued, "the evidence as a whole" showed that defendant "took otherwise innocent photographs and perverted them for his sexual gratification."  Again, the prosecutor pointed to the Internet search terms and the uncharged images.  The prosecutor summed up by saying that defendant "[w]as viewing [the charged images]" "[f]or a sexual purpose."

¶ 10    The jury acquitted defendant of three counts related to the individual charged images, but it convicted him of the remaining counts.

---

[2] The prosecutor conceded that the uncharged images were not sexually exploitative material.

## II. The Evidence That the Charged Images Are Sexually Exploitative Was Insufficient

¶ 11    Defendant contends that we should vacate his convictions for two reasons: (1) there was insufficient evidence that the charged images are "sexually exploitative" as required to support a conviction under section 18-6-403(3) because they aren't "erotic nudity," and (2) he didn't possess or control the images within the meaning of section 18-6-403(3) merely by looking at them online.[3] Because we agree with defendant's first contention, and vacate his convictions and adjudications on that basis, we don't address his second.[4]

---

[3] Defendant also contends that the People's theory of prosecution — that the charged images, though otherwise "not sexual" and "otherwise innocent" (according to the prosecutor), nevertheless constituted "erotic nudity" because of defendant's purpose in looking at them — was legally invalid. But that's the same argument he makes in contending that the evidence was insufficient to support his convictions, so we don't address this contention separately.

[4] Defendant's second contention is that he didn't possess or control the images within the meaning of section 18-6-403(3), C.R.S. 2016, because he merely looked at them on the Internet without saving or downloading them onto his computer. We note, however, that the supreme court held recently that "for purposes of section 18-6-403(3), knowingly seeking out and viewing child pornography on the internet constitutes knowingly possessing or controlling it under the statute." *Marsh v. People,* 2017 CO 10M, ¶ 28.

5

¶ 12     Under section 18-6-403(3)(b.5), "[a] person commits sexual exploitation of a child if, for any purpose, he or she knowingly . . . [p]ossesses or controls any sexually exploitative material for any purpose."  "Sexually exploitative material" is "any photograph . . . that depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." § 18-6-403(2)(j).  Explicit sexual conduct includes, as relevant in this case, "erotic nudity." § 18-6-403(2)(e).  "Erotic nudity" means

> the display of the human male or female genitals or pubic area, the undeveloped or developing genitals or pubic area of the human male or female child, the human breasts, or the undeveloped or developing breast area of the human child, for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved.

§ 18-6-403(2)(d).

¶ 13     So under the relevant statutory provisions, the charged images were "erotic nudity," and therefore "sexually exploitative material," if they (1) displayed genitals, pubic areas, or breasts of a child; (2) for the purpose of real or simulated sexual gratification of one or more of the persons involved.  *See* § 18-6-403(2)(d), (e), (j); *People in*

6

*Interest of T.B.*, 2016 COA 151M, ¶ 31; *People v. Gagnon*, 997 P.2d 1278, 1281 (Colo. App. 1999).

¶ 14 It is undisputed that the charged images meet the first condition — they show physical areas of children described in section 18-6-403(2)(d). This case then turns on the second condition. Defendant and the People offer competing views of how this aspect of the statutory definition of "erotic nudity" should be construed. Defendant argues that whether an image is "for the purpose of real or simulated overt sexual gratification" must be determined objectively based on the content of the image itself, and that a viewer's purpose in looking at the image does not cause it to become "erotic nudity." The People respond that even if an image is, when viewed objectively, not sexually exploitative, it becomes so if the person looking at the image does so for personal sexual gratification. In other words, the People argue that an image is "for the purpose of real or simulated overt sexual gratification," even if it was not created or displayed for such a purpose, whenever the viewer's purpose in looking at the image is such gratification.

¶ 15 Though we don't agree with defendant's argument entirely, we conclude that on the key issue — whether the viewer's subjective

7

purpose in looking at an image can transform an image that otherwise is not "erotic nudity" into one that is — defendant is correct.

### A.  Preservation and Standard of Review

¶ 16    Relying on *People v. Lacallo*, 2014 COA 78, and *People v. McCoy*, 2015 COA 76M (Webb, J., specially concurring) (*cert. granted* Oct. 3, 2016), the People argue that this issue is not preserved because when defense counsel moved for a judgment of acquittal at trial, she didn't expressly articulate the statutory claim defendant now makes on appeal.[5]  But recall that the issue of the prosecution's theory had come up before trial.  And in her opening statement, defense counsel argued to the jury that the charged images didn't meet the definition of sexually exploitative material because of what they do and do not show.  In denying defendant's motion for a judgment of acquittal, the district court recognized that there was an issue whether the charged images meet that definition, ruling that "a reasonable juror could find that the

---

[5] The supreme court has granted certiorari review in a number of cases to decide whether the People's preservation theory applies to a sufficiency of the evidence challenge.  *E.g., People v. McCoy*, 2015 COA 76M (*cert. granted* Oct. 3, 2016).

images, in fact, meet the definition of sexually exploitative." For all these reasons, we conclude that the issue was sufficiently preserved. *See People v. Syrie*, 101 P.3d 219, 223 n.7 (Colo. 2004) (an issue is preserved where the trial court has "adequate opportunity to make factual findings and legal conclusions on any issue that is later raised on appeal"); *People v. McFee*, 2016 COA 97, ¶ 31 ("Where, despite imprecision in the objection, the trial court actually rules on the claim raised on appeal, and makes findings of fact and conclusions of law, the claim is sufficiently preserved.").

¶ 17 We review the record de novo to determine if there was sufficient evidence to support the convictions. *People v. Douglas*, 2015 COA 155, ¶ 8. "In reviewing the sufficiency of the evidence, we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is both 'substantial and sufficient' to support the defendant's guilt beyond a reasonable doubt." *Id.* (quoting *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005)).

¶ 18 Given that the People concede the charged images don't depict "erotic nudity" if viewed objectively, the issue presented — whether a viewer's subjective purpose in looking at an image can render it

"erotic nudity" — is entirely one of statutory construction. We review such issues de novo. *Marsh v. People*, 2017 CO 10M, ¶ 19.

### B. Analysis

¶ 19    We construe a statute to give effect to the intent of the General Assembly, which we discern by looking first to the language of the statute. *Mosley v. People*, 2017 CO 20, ¶ 16. "If the language is clear and unambiguous, we must interpret the statute according to its plain meaning." *Marsh*, ¶ 20. "To reasonably effectuate the legislature's intent, a statute must be read and considered as a whole, and should be interpreted to give consistent, harmonious, and sensible effect to all its parts." *Mosley*, ¶ 16; *see People v. Berry*, 2017 COA __, ¶ __ ("[W]e consider the words and phrases at issue in context — both in the context of the statute of which the words and phrases are a part and in the context of any comprehensive statutory scheme of which the statute is a part."). We also construe statutory terms "in a manner that avoids constitutional infirmities. Thus, if a statute is capable of alternative constructions, one of which is constitutional, then the constitutional interpretation must be adopted." *People v. Zapotocky*, 869 P.2d 1234, 1240 (Colo. 1994) (citations omitted).

10

¶ 20    The definition of "sexually exploitative material" speaks in terms of the "depict[ion]" of children in visual images. § 18-6-403(2)(j). It therefore focuses on the nature of the image itself. And the depiction must show "explicit sexual conduct." So, one might wonder whether the nature of the conduct depicted in a photograph is a chameleon that can change depending on who is looking at it.

¶ 21    The definition of "erotic nudity" suggests an answer: it speaks in terms of whether particular parts of a child's body are "display[ed] . . . for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved." § 18-6-403(2)(d). Thus, this definition focuses on the purpose for which the image is displayed, not the subjective purpose of a particular viewer.

¶ 22    That the particular viewer's purpose in looking at the image is irrelevant for purposes of determining whether the image is "erotic nudity" is confirmed by the prohibitory language of the statute pertaining to the possession of sexually exploitative material. It says that "[a] person commits sexual exploitation of a child if, *for any purpose*, he or she knowingly . . . [p]ossesses or controls any sexually exploitative material *for any purpose*," subject to certain

11

exceptions that don't apply in this case. § 18-6-403(3)(b.5). The People's position that the purpose of a particular person who possesses an image can determine whether the image is "erotic nudity" — indeed, can transform an image that otherwise isn't into one that is — runs headlong into this statutory language.

¶ 23    We aren't writing on a clean slate. Decisions of the Colorado Supreme Court and divisions of this court support our interpretation of the statute, as does federal authority.

¶ 24    In *People v. Batchelor*, 800 P.2d 599 (Colo. 1990), the supreme court addressed the constitutionality of the definition of "erotic nudity" in section 18-6-403(2)(d).[6] The court held that the statute

---

[6] Because statutes like section 18-6-403 criminalize conduct based on the content of expressive speech, they implicate free speech concerns. The mere display of child nudity, without more, is protected speech. *People v. Batchelor*, 800 P.2d 599, 602 (Colo. 1990); *see Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213 (1975) ("[A]ll nudity cannot be deemed obscene even as to minors."). But there is a substantial body of law affirming the constitutionality of statutes criminalizing the production or viewing of sexually exploitative images of fully or partially naked children because "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of paramount importance." *People v. Grady*, 126 P.3d 218, 221 (Colo. App. 2005); *see Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002) (pornography produced with real children is not protected by First Amendment); *New York v. Ferber*, 458 U.S. 747, 757 (1982) (laws enacted to protect minors by criminalizing child pornography are constitutional); *United States v.*

12

"does not reach constitutionally protected materials depicting nude children for . . . legitimate purposes" because it is limited to images "*made* 'for the purpose of overt sexual gratification or stimulation of one or more of the persons involved.'" *Id.* at 602 (emphasis added). In so holding, the court focused on why an image was created so as to distinguish between innocent (or, at least, constitutionally protected) nude images, and sexually exploitative nude images. *Id.* at 603 ("[O]nly those depictions of nudity *taken* for the purpose of sexual gratification or stimulation are proscribed by the statute. . . . Photographs *taken* for family, artistic, or any other legitimate purpose are not proscribed by the statute.") (emphasis added); *see also id.* ("Police, prosecutors, judges and juries do not have discretion under this statute to charge or convict a defendant for making a photograph *depicting* nudity *for any purpose* other than sexual gratification or stimulation.") (emphasis added); *Gagnon*, 997

---

*Frabizio*, 459 F.3d 80, 90 (1st Cir. 2006) (the government has a compelling interest in preventing the sexual exploitation of children). Thus, laws enacted to protect the victims of child pornography by penalizing those who produce or possess such materials are, as a general matter, constitutional. *See Osborne v. Ohio*, 495 U.S. 103, 109 (1990).

P.2d at 1281-82 (the "display . . . must be for the purpose of" sexual gratification or stimulation).

¶ 25    The division's decision in *People v. Grady*, 126 P.3d 218 (Colo. App. 2005), advances the ball even farther.  In holding that a "person[] involved" as used in the definition of "erotic nudity" can include a viewer of an image, the division held that the term must be applied "objectively, so as to include a reasonable viewer of sexual materials that have been distributed."  *Id.* at 220; *see also id.* at 221 ("[T]he People must prove that . . . the content of those photographs, viewed objectively, would lead to sexual gratification or stimulation of a reasonable viewer.").  So if, as in that case, an image is created or distributed for the purpose of real or simulated overt sexual gratification or stimulation of a viewer of the image, it may qualify as "erotic nudity."  But, again, the focus is on why the image was created, and the relevant viewer is a hypothetical "reasonable viewer."

¶ 26    Likewise, federal cases interpreting similar federal statutes have held that using an objective test (i.e., one that disregards a particular viewer's subjective purpose) is necessary to assure that those statutes are applied in a constitutional manner.  *See, e.g.,*

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) (computer-generated child pornography that did not depict real children was protected under the First Amendment because it did not directly harm children; a person's purpose in viewing such materials is irrelevant); *United States v. Amirault*, 173 F.3d 28, 34-35 (1st Cir. 1999) ("[I]n determining whether there is an intent to elicit a sexual response, the focus should be on the objective criteria of the photograph's design."); *see also United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989) ("Although it is tempting to judge the *actual* effect of the photographs on the viewer, we must focus instead on the *intended* effect on the viewer. . . . 'Child pornography is not created when the pedophile derives sexual enjoyment from an otherwise innocent photo.'" (quoting in part *United States v. Villard*, 700 F. Supp. 803, 812 (D. N.J. 1988))); *United States v. Wiegand*, 812 F.2d 1239, 1245 (9th Cir. 1987) ("Private fantasies are not within the statute's ambit."); *Commonwealth v. Rex*, 11 N.E.3d 1060, 1068 n.13, 1071 n.16 (Mass. 2014) (rejecting the argument that images of nude children that otherwise did not depict any "lewd exhibition" could be regarded as doing so based on how the

defendant stored them, other images he possessed and kept with them, or what he thought in looking at them).

¶ 27    Notwithstanding all this, the People argue that the charged images meet the definition of "erotic nudity" because defendant — a "person[] involved" as a viewer — viewed the charged images for sexual gratification.  § 18-6-403(2)(d).  They assert that, in several prior cases, Colorado appellate courts have considered a viewer's subjective response in determining whether an image was "erotic nudity."  *See Batchelor*, 800 P.2d at 604; *T.B.*, ¶ 34; *Grady*, 126 P.3d at 221; *Gagnon*, 997 P.2d at 1282.  But the People mischaracterize these cases.

¶ 28    In all of them, the courts considered extrinsic circumstances only to determine whether the images were *created* to be viewed for sexual gratification.  *See Batchelor*, 800 P.2d at 604 (that the defendant concealed the photos of his naked nine-year-old daughter, took the pictures at night, posed the child, and took the pictures secretly showed that he took the pictures for his own sexual gratification); *T.B.*, ¶ 34 (that the defendant had texted the victims a picture of his erect penis when he solicited nude pictures from the victims showed that the pictures taken by the victims were

intended for the defendant's sexual gratification); *Grady*, 126 P.3d

at 222 (the defendant produced photos of teenage models that he

also posted on a website entitled "True Teen Babes"); *Gagnon*, 997

P.2d at 1284 (in deciding whether pictures taken by the defendant

of a teenage girl in sexually suggestive poses and clothing were

produced for sexual gratification, the court considered that "the

pictures of the victim were found along with a large collection of

other material the trial court described as adult pornography").[7]  In

none of the cases did the court consider whether the subjective

---

[7] Likewise, in federal cases applying similar statutes, courts have considered extrinsic circumstances only to determine whether the images were *created* to be viewed for sexual gratification.  *Compare United States v. Larkin*, 629 F.3d 177, 183-84 (3d Cir. 2010) (pictures of naked girls in a bathtub were determined to be child pornography because the defendant engineered the photographs to arouse pedophiles), *and United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987) (picture of naked children was lascivious "because the photographer arrayed it to suit his peculiar lust" and lasciviousness was a characteristic of "the exhibition which the photographer sets up"), *with United States v. Amirault*, 173 F.3d 28, 34-35 (1st Cir. 1999) (picture of a naked girl in a hole on the beach was not child pornography because it was not necessarily produced to elicit a sexual response, even though the defendant admitted that he possessed the photo because he found it erotic), *and Doe v. Chamberlin*, 139 F. Supp. 2d 637, 642-44 (M.D. Pa. 2001) (pictures of naked girls taking a shower at the beach were "innocent" because they were not produced to elicit a sexual response), *aff'd*, 299 F.3d 192 (3d Cir. 2002).

purpose of a viewer not involved in the creation or distribution of the images rendered the images "erotic nudity."

¶ 29    We must also reject the People's position because we foresee several untenable consequences of adopting it.

- Images that are otherwise constitutionally protected images could become unprotected based merely on the subjective response of a particular viewer.  *See Batchelor*, 800 P.2d at 602 (pictures depicting nude children for legitimate purposes are constitutionally protected).

- In some situations, the viewer, but not the creator, of an image could be prosecuted, which wouldn't further the purpose of the statute to protect children from sexual exploitation.  *See* § 18-6-403(1).[8]

- Or a situation might arise where one viewer, but not another, could be prosecuted because of their different subjective purposes for viewing an image.  That would raise First Amendment and equal protection concerns.

---

[8] The statute seeks to further this purpose by attacking both the supply and the demand side of the equation.  But if an image, as created, is not sexually exploitative, that purpose is not served as, by definition, there was no sexual exploitation of any child.

¶ 30    The People presented no evidence that, objectively considered, a reasonable viewer of the charged images would look at them for the purpose of sexual gratification or stimulation.  In fact, they conceded the contrary, pinning their hopes instead on evidence of defendant's subjective purpose in looking at them.  That evidence was irrelevant.[9]  It follows that the evidence was insufficient to support defendant's convictions.

## III.  Conclusion

¶ 31    The judgment is vacated.  The case is remanded to the district court to dismiss the charges.

JUDGE GRAHAM and JUDGE WELLING concur.

---

[9] We aren't holding that in any case brought under section 18-6-403 a fact finder may consider only the image itself.  That approach would likely be inconsistent with Colorado case law.  We hold only that evidence of a defendant-viewer's subjective purpose does not transform images that otherwise don't constitute "erotic nudity" into images that do.